# SUPREME COURT.

## JUSTUS NOLTON agt. THE WESTERN RAILROAD CORPORATION.

A *decision*, " sustaining or overruling a demurrer," may be *appealed* from as an *order*, before judgment is entered. And that, too, whether the demurrer goes to the *whole or only a part* of the pleading. ( *See Lewis agt. Acker*, 8 *How. Pr. R.* 414, *adverse; and* 4 *Sand. S. C. R.* 702, *in accordance with this decision.*)

A plaintiff may sustain his action against a railroad company for personal injuries received while riding in their cars, where he avers negligence and a want of care on the part of the defendants, notwithstanding he alleges that the contract by which the company agreed and was bound to carry him was made with another—the United States, and not with himself.

If the company undertook to carry the plaintiff at all, no matter though their undertaking was with the United States and not with him, the *undertaking itself* charged them with the *duty* of carrying him with reasonable care and skill.

If the company refused to carry the plaintiff at all, then an action for *breach of contract* might be brought by the United States.

*Albany General Term, February*, 1854.

WRIGHT, HARRIS, and WATSON, *Justices.*

Appeal from order overruling demurrer. The complaint contains two counts, the first of which states, that 'the defendants are a corporation engaged in carrying passengers and freight from Greenbush to Boston by railroad—that they had entered into a contract with the United States, by which, for a stipulated price and period they had agreed to transport upon their railroad, and in their cars, the mail and mail-agent—that the plaintiff was the mail-agent on that route, in the employ of the United States—that on the 25th of June, 1851, the defendants, in pursuance and in consideration of their contract with the United States, received the plaintiff as such mail-agent into one of their railroad cars, and " the said plaintiff, for the consideration aforesaid, became, and was a passenger in said cars, to be thereby, and by the said defendants, safely and with due care and skill carried and conveyed from Greenbush to Worcester, and which the defendants then and there undertook, and were bound to do "—that the defendants, not regarding their said undertaking and obligation, did not, nor would,

VOL. X.                    7

safely, and with due care and skill, carry the plaintiff as such passenger, but failed and neglected so to do, and on the contrary thereof, so carelessly, unskilfully, and improperly managed in that behalf, that afterward, and while the said car was proceeding on the railroad from Greenbush to Worcester, and while the plaintiff was such passenger therein, the car, by and through the defectiveness and insufficiency of the same, and of the construction and materials thereof, or of the engine and tender, or of some one of the cars of the train to which the car was attached, and by and through the carelessness, unskilfulness, improper conduct, and default of the defendants, and their officers, agents, and servants in that behalf, and in the running, managing, and conducting of the car, and train, and the engine, was broken in pieces and thrown off the railroad track, and thereby, then and there, the ribs of the plaintiff and the bones and parts adjacent thereto, and the limbs of the plaintiff became and were dislocated, bruised, fractured, and broken, and he otherwise grievously hurt, &c.

To this first count the defendants demurred, on the ground that it does not state facts sufficient to constitute a cause of action.

The complaint contained a second count upon which an issue of fact was joined.

The issue of law upon the demurrer having been brought to a hearing at a special term, the demurrer was overruled, with liberty to the defendants to answer that part of the complaint to which it was interposed in twenty days after notice of the decision, upon payment of the costs of the issue of law and the proceedings thereon, to be taxed by the clerk or one of the justices of this court. From this order or judgment the defendants appealed.

W. A. BEACH, *for plaintiff*.
J. K. PORTER, *for defendants*.

By the court—HARRIS, Justice. If the recent decision, in Lewis agt. Acker, (8 *How.* 414,) is to be followed, this appeal cannot be entertained. It is there held, that though by an

Justus Nolton agt. The Western Railroad Corporation.

amendment of the 349th section of the Code, adopted in 1851, it is provided that an order sustaining or overruling a demurrer is appealable, yet, as there is no such thing known in practice as an order which sustains or overrules a demurrer, the provision must remain inoperative " until we get a new edition of the Code." In other words, the court hold, that though it is apparent that it was the intention of the legislature that the party against whom the decision upon a demurrer should be made, might have the decision reviewed upon appeal, before judgment, yet as, being ignorant of legal practice, it has failed to express that intention in the most approved and technical language, the provision itself shall be declared " inoperative," and the legislative intention disregarded.

But is it so clear that a decision like those in question may not, without much violence to legal accuracy, be called an *order ?* The distinguishing characteristic of a judgment is, that it is *final*, while that of an order, when it relates to proceedings in an action, is, that it is interlocutory. The decision upon an issue of law, either sustaining or overruling a demurrer, is, I admit, final in its character. Unless reversed, upon appeal, judgment must be entered in conformity with the decision. But it is very much a matter of course, when a demurrer is allowed to permit the party whose pleading is found defective to amend, upon terms, or when the demurrer is overruled, and it appears to have been interposed in good faith, to allow the party to plead over, upon payment of costs. That part of the decision which authorizes further pleading in the action, cannot, of course, be regarded as final in its character. The most that can be said of such a decision is, that it is a *conditional* judgment. It is analogous to the old rule for *judgment interlocutory*. In my judgment, therefore, it is no very great *misnomer* to call such a decision an *order*.

But it had been decided just previous to the adoption of the amended Code of 1851, that the decision of the court upon a demurrer, whether leave to amend, or plead over, were granted or not, was a judgment, and that no appeal would lie from such decision, until judgment should be entered. (Bentley agt.

Jones, 4 *How.* 335; King agt. Stafford, 5 *How.* 30.) Upon the correctness of these decisions I take no issue. But, in view of these decisions, and shortly after they were promulgated, the legislature declared that an appeal might be taken from *an order* " when it sustains or overrules a demurrer." What was intended by this enactment? It could not be that it was merely designed to authorize an appeal from a final judgment upon demurrer. This had already been provided for. The 348th section authorized an appeal, upon the law, *from any judgment.* It is to be observed, too, that the amendment is inserted, not in the section which provides for appeals from judgments, but in the succeeding section, which allows an appeal from *orders* as distinguished from judgments. It cannot be doubted, I think, that it was the purpose of the legislature to allow such decisions to be reviewed before judgment. Such being the clear legislative intention, I suppose it is the plain duty of the court to give it effect, rather than to thwart it by any technical construction or narrow criticism upon the terms employed in giving it expression.

This view of the amendment in question was taken by all the justices of the superior court of New-York, in Reynolds agt. Freeman. (4 *Sand.* 702.) The court say, " Section 349, as amended, permits an appeal from a decision upon demurrer, as from an *order*, as distinguished from a judgment." The learned judge who pronounced the decision in that case, proceeds to add, what I regard as the true practice in such cases, that " if a judgment have been perfected upon the decision of the demurrer, the appeal must be from such judgment, but if no judgment have been entered, the party may appeal from the order of the judge sustaining or overruling the demurrer." It is true that in Drummond agt. Husson, (1 *Duer*, 633,) the same court take a distinction between a demurrer to a whole pleading and a demurrer to a part only. Mr. Justice BOSWORTH was of opinion that a decision in the latter case might be appealed from as an order, but not in the former. The question came before the court incidentally, upon the taxation of costs, and there is no indication of any intention to recall their deci-

Justus Nolton agt. The Western Railroad Corporation.

sion in the case of Reynolds agt. Freeman. I am persuaded that enlightened court will find, upon consideration, that the distinction taken is untenable. Upon this subject, see also Nellis agt. De Forest. (6 *How.* 413.)

The construction of the provision in question which I thus maintain is greatly recommended, as I am sure every practicing lawyer will agree, by its convenience. A demurrer is but a legal exception to the sufficiency of a pleading. When such exception has been sustained by a single judge, and the party whose pleading has been pronounced defective desires to take the judgment of the court, at general term, upon the decision, before proceeding further in the action, why should he be obliged to allow final judgment to be entered against him, before he is permitted to appeal? If, by the decision, he is allowed to amend, upon terms, why should he be required to forego this privilege, as a condition of the review? If the demurrer is overruled, why not allow the decision to be reviewed without having final judgment entered, when, perhaps, if finally unsuccessful, the party may design, and the court would think it just to allow him to plead over upon the merits. Such considerations, I apprehend, controlled the legislature when they adopted the second subdivision of the 349th section of the Code, as it now stands. The apprehension that having once appealed from the decision, as *an order*, the unsuccessful party might again appeal after judgment, which seems to have alarmed the court, in Lewis agt. Acker, is, I think, quite imaginary. The court will never be troubled with such appeals, except in cases where it is intended to take the judgment of a court of last resort upon the question, and then they should be entertained.

Having determined that the appeal is properly taken, it becomes necessary to examine the decision upon the merits. The count in question states, in substance, that the defendants had contracted with the United States to carry the mail and mail agent in their cars, and upon their road, and that they had received the plaintiff, he being such mail agent, as a passenger, and then it is alleged that this state of facts imposed upon the defendants the

Justus Nolton agt. The Western Railroad Corporation.

duty of carrying the plaintiff safely and securely, which .duty they have violated. I cannot doubt that these allegations were sufficient to sustain the action. What though the contract under which the defendants received the plaintiff into their cars, as a passenger, was made with the United States and not with the plaintiff? The question is, not with whom the contract was made, but what was the defendants' duty? If they undertook to carry the plaintiff at all, no matter though their undertaking was with the United States, and not with him, the undertaking itself charged them with the duty of carrying him with reasonable care and skill. If he was lawfully in the car, for the purpose of being carried, it is of no importance how he came there. The very fact that he was there as a passenger, and with the defendants' leave, was enough to give him a right of action for any want of care or skill which resulted in his personal injury. It is true that if the defendants had refused to carry him, the government and not he could sustain an action for a breach of the contract to carry. But the defendants having assumed to carry him, he may maintain an action for the breach of the duty they owed him as a passenger.

These views are fully sustained by the judgment of the Court of Queen's Bench in Collett agt. the London and North-Western Railway Company, decided in 1851. (*See* 20 *Law Journal N. S., p.* 411.) In that case the defendants carried the mail from London to Tamworth upon the requirement of the Postmaster General, as they were bound to do by act of Parliament, for which service they were entitled to receive compensation from the government. The plaintiff was an officer of the post-office department in charge of the mails. He brought his action against the company, alleging these facts, and charging it with the duty of carrying him with due and proper skill, &c., and alleging that the company had neglected to use such care and skill, and that he had been injured, &c. It was held, upon demurrer, that a duty, as alleged, arose out of the obligation imposed upon the defendants by the act of Parliament, and that the action might be maintained. It was insisted by the defendants' counsel in that case, as it is here, that the contract,

being between the Postmaster General and the defendant, the plaintiff could have no remedy against the company; but Lord CAMPBELL interrupted the counsel, saying, " The question is, what is *the duty* of the company? Is it not to carry safely and securely, if they carry at all ?" PATTERSON J. said, " The declaration expressly alleges that the plaintiff and the mails were actually received, and were being carried in a carriage of the defendants, and that the plaintiff was lawfully in and upon the carriage. There is no contract in the case at all. An obligation is cast upon the company to carry, and the duty arising out of that is, to carry safely and securely, a breach of which is alleged."

The order overruling the demurrer should be affirmed with costs to be taxed by the clerk, but with liberty to the defendants to answer within twenty days after notice of this decision, upon payment of the costs.