Ives *v.* Miller.

[Washington General Term, January 1, 1855. Hand, Cady, C. L. Allen and *James*, Justices.]

---

# Ives *vs.* Miller.

In an action upon a promissory note given by the defendant to the plaintiff, the former alleged in his answer that the parties had been members of a partnership firm, which was dissolved prior to the giving of the note; but that the accounts of the firm, as between the parties, had never been settled or adjusted, and that the plaintiff had refused and neglected to settle and adjust the same; that the firm was indebted to the defendant in the sum of $1000, one half of which the plaintiff was liable to pay to the defendant. The answer further demanded that an account of the partnership concerns and transactions be taken; and that whatever was found due to the defendant should be allowed to him as a set-off. *Held*, on demurrer, that whatever claim the defendant might have against the firm was not a counterclaim against the plaintiff, nor the subject of a set-off.

*Gage* v. *Angell*, (8 *How. Pr. Rep.* 335,) disapproved.

Ives *v.* Miller.

Until the affairs of a copartnership are wound up, what one partner may owe the firm is not a debt due to a copartner; nor is the indebtedness of the firm to one of the members, a debt due from the other members of the firm to him.

The rights and interests of partners before and after the dissolution, and their remedies against each other, at law and in equity, considered.

When a demurrer is overruled, or sustained, a party may appeal as from an order, *before* judgment is actually entered up. *Secus, after* judgment, it seems.

It seems there are many causes of action, as the word "action" is defined by the code, that are no answer to a suit, as counterclaims.

On appeal from an order, the court has discretion as to costs.

THIS was an appeal from an order made at a special term, over-ruling a demurrer. The action was on a note for $706.74, given by the defendant, dated on the 22d day of November, 1853, and payable with interest to the plaintiff, or order, at the Bank of Malone, on the 15th day of May, 1854. The summons and complaint were dated the 24th of May, 1854. The answer admitted the making of the note, and claimed a set-off of an indebtedness from the plaintiff to the defendant for money paid to the plaintiff; board, washing, &c. furnished to him; goods, &c. sold and delivered to him; and for work and labor done, &c. The defendant further answered that the plaintiff and defendant, in 1849, formed a copartnership in the business of buying and selling goods, &c. at Mount Holley, in Vermont, under the firm of "A. H. Miller & Co." and continued the business there two years, and then removed to Malone and continued the business at the latter place about one and a half years, "and then, by mutual consent, dissolved the said copartnership, but did not, and never have, settled or adjusted the accounts or concerns of the said copartnership, as between the plaintiff and the defendant in this action, as copartners in said firm" of A. H. Miller & Co.; and that the plaintiff had neglected and refused, and still neglects and refuses to settle and adjust the copartnership accounts and concerns, although often requested so to do. And that, "for the purchase of goods, wares and merchandise, and for clerk hire and the boarding of clerks, and for the expenses of transacting and negotiating the business of the said firm of A. H. M. & Co., and for the debts of the said firm, paid by the defendant in this action, the said firm is indebted to the said de-

fendant in a large sum of money, to wit, in the sum of one thousand dollars, the one half of which the plaintiff is liable to pay to the defendant, according to the terms and conditions of the said copartnership formed and entered into by and between the parties to this action. The defendant therefore demands that an account of the said partnership concerns and transactions, between the parties to this action, be taken and stated by and under the order and direction of the court, and that such sum as may appear upon such account to be justly due to the defendant be ascertained and allowed to him, and that such part thereof as the plaintiff may be liable to pay to the defendant, be allowed and set off, &c., together with the other sums before pleaded, and that he have judgment for the balance.

The plaintiff took issue upon the other matters of set-off; but demurred specially to that portion of the answer relating to the copartnership. The special term overruled the demurrer, and gave leave to the plaintiff to amend; but the plaintiff, before the entry of judgment, appealed as from an order.

*J. Hutton,* for the plaintiff.

*J. R. Flanders,* for the defendant.

*By the Court,* HAND, P. J. No judgment having been entered up, it is objected that the appeal is premature. The demurrer is to a part only of the answer, and leave to amend was given. I had susposed it to be settled that an appeal from an order would lie in such a case. (2 *Whitt. Pr.* 200, 2d ed.) And in this district, under the 2d subdivision of § 349 in its present form, I believe we have invariably held that where a demurrer has been sustained or overruled, the appeal in all cases may be as from an order, if judgment has not been actually entered up. *King* v. *Stafford,* (5 *How. Pr. Rep.* 30; *S. C.,* 6 *Id.* 127,) was an attempt to appeal from the decision of a judge, under § 247; and the reasons given in 6 Howard for the decision, and the case itself may, perhaps, be considered as substantially overruled by the court of appeals in *Swarthout* v. *Curtis,*

(4 *Comst.* 416 ; *and see* 3 *Sandf.* 723.) Besides, *Bentley* v. *Jones*, (4 *How. Pr. Rep.* 335 ;) and *King* v. *Stafford*, were decided before the amendment of § 340. The remarks ·of the court in *Reynolds* v. *Freeman*, (4 *Sandf.* 702,) and in *Notten* v. *West. R. Co.*, (10 *How. Pr. Rep.* 97,) on this point, seem to me to be correct. And a different rule might sometimes be very inconvenient ; as if a demurrer to a complaint to wind up an alleged copartnership, because it did not set out the facts consti-tuting a copartnership, should be overruled, there would be the delay and expense of taking an account, and yet, on appeal, the demurrer might finally be sustained.

On the merits, I think the answer shows no counterclaim against the plaintiff arising out of a cause of action on contract existing at the commencement of the suit. (*Code*, § 150.) The defendant says, that the firm became indebted to him for the purchase of goods, &c., and for board furnished and expenses and debts paid for the firm, $1000 ; and that the plaintiff is liable to pay one half of this to him, according to the terms and conditions of the copartnership. But he does not state that those terms and conditions were special, or what they were, and he asks for an accounting, and that what shall be found due to him shall be allowed ; and that such part thereof as the plaintiff shall be liable to pay, be set off in this cause. But he does not allege that the plaintiff owes the firm ; or that any thing will be due from the plaintiff to the defendant on the first winding up of the copartnership concerns. In this respect, the answer falls short of that in the case of *Gage* v. *Angell*, (8 *How. Pr. R.* 335,) where it was averred, that on a settlement a balance was due from the plaintiff to the defendant. But with all respect for the able judge who decided that cause, and whose opinion contains all that can be said on that side of the question, I think, if this answer had contained such an allegation, it would have still been insufficient. I do not understand that one partner has a demand, debt, or counterclaim against his copartner before or after dissolution, until a final settlement, where there is no fraud, nor an express agreement, nor any special circumstances. Each partner has a specific lien on the partnership

effects; not only for the amount of his share, but for moneys advanced by him for the use of the firm beyond his share, and for money abstracted by a copartner beyond his share. (*Perk. Colly. on Part.* § 125, *and cases there cited. Buchan* v. *Sumner,* 2 *Barb. Ch.* 165.) Upon dissolution, each party may insist upon a sale of the property. (*Colly.* §§ 273, 313. *Evans* v. *Evans,* 9 *Paige,* 178. 3 *Kent,* 64. *Featherstonhaugh* v. *Fenwick,* 17 *Ves.* 309. *Fereday* v. *Wightwick,* 1 *Taml.* 250.) The funds and other assets are to be collected, an account taken, and all the creditors ascertained and paid. (*Cary,* 292. *Perk. Colly. B.* 2, *ch.* 3, § 4. *Paynter* v. *Houston,* 3 *Meriv.* 297.) On the final accounting, each partner is to be allowed, as against the other, what he has brought into the business; and may charge his copartner with what the latter has not but should have brought in; and with what he has taken out, beyond his proportionate share; and nothing is to be considered his share but his proportion of the residue or balance of the account. (*West* v. *Skip,* 1 *Ves.* 239. *Cary on Part.* 89. *Colly. on Part.* § 318.) The answer makes out no case for contribution; and where that is not the case, and there is no special agreement, nor fraud, no action at law would lie, unless there has been a balance struck. (*Westerlo* v. *Evertson,* 1 *Wend.* 532. *Pattison* v. *Blanchard,* 6 *Barb.* 537. *Colly.* §§ 284, 289. *Smith* v. *Barrow,* 2 *T. R.* 479. *Buller, J., Fromont* v. *Coupland,* 2 *Bing.* 170. *Crass* v. *Cheshire,* 7 *Exch. R.* 43. *Gage* v. *Angell, supra, and cases there cited.*) And, until the affairs of the concern are wound up, what one partner may owe the firm is not a debt, due to a copartner; nor is the indebtedness of the firm to one of the members a debt due from the other members to him. The rights of the parties were very clearly stated by Lord Cottenham, so late as in 1838, in *Richardson* v. *Bank of England,* (4 *My. & Cr.* 165.) That was a motion to compel a partner to pay into court a large sum, which it was insisted he had admitted he had drawn out with the consent of the partners, before dissolution. The lord chancellor remarked upon the ordinary use of the words "creditor" and "debtor," as applied to partners who advance to, or draw

Ives *v.* Miller.

money from the firm by consent, and added: "but though these terms, 'creditor' and 'debtor,' are so used, and sufficiently explain what is meant by the use of them, nothing can be more inconsistent with the law of partnership, than to consider the situation of either party as in any degree resembling the situation of those whose appellation has been so borrowed. The supposed creditor has no means of compelling payment of his debt; and the supposed debtor is liable to no proceedings, either at law or in equity—assuming always that no separate security has been taken or given. The supposed creditor's debt is due from the firm of which he is a partner; and the supposed debtor owes the money to himself, in common with his partners; and pending the partnership, equity will not interfere to set right the balance between the partners." And again: "*But if,* pending the partnership, neither law nor equity will treat such advances as debts, will it be so after the partnership has determined, before any settlement of accounts, and before the payment of the joint debt, or the realization of the partnership estate? Nothing is more settled than that, under such circumstances, what may have been advanced by one partner, or received by another, can only constitute items in the account. There may be losses, the particular partner's share of which may be more than sufficient to exhaust what he has advanced, or profits more than equal to what the other has received; and until the amount of such profit and loss be ascertained, by the winding up of the partnership affairs, neither party has any remedy against, or liability to the other, for payment from one to the other, of what may have been advanced or received." / And he cites what was said by Lord Elden, in *Crawshay* v. *Collins,* "where a sum is advanced as a loan to an individual partner, his profits are first answerable for that sum; and if his profits shall not be sufficient to answer it, the deficiency shall be made good out of his capital; if both his profits and his capital are not sufficient to make it good, he is considered a debtor for the excess." (2 *Russ.* 325. And see *Foster* v. *Donald,* 1 *J. & W.* 252; *Barb. on Set-off,* 142; *Colly.* § 326.) If resort is first had to the partnership property in case of a loan by the firm to one partner, certainly

it should be so in case of mere advances by one partner to the firm. There are cases of natural equity, irrespective of any statute, where the court will interfere. (*See Lindsay* v. *Jackson,* 2 *Paige,* 581; *Gay* v. *Gay,* 10 *Id.* 369 ; *Ainslie* v. *Boynton,* 2 *Barb.* 258; *Barb. on Set-off,* 190.) If the plaintiff, on final settlement, will be indebted to the defendant, and is insolvent, and the defendant therefore in danger of losing what may be so found due to him, the latter would be entitled to relief by a cross-action, if not by a proper answer in this, on the ground of his peculiar equity. Perhaps even then the amount of this note should be brought into court. (*Gold* v. *Canham,* 1 *Ch. Ca.* 311. *S. C.,* 2 *Swanst.* 325. 8 *Vin.* 558. 3 *Dan. Pr.* 2017, *Perk. ed.*) But a mere right to have an account taken, on the dissolution of the firm, is not sufficient. That may be required for the purpose of winding up the concern. (*Scott* v. *Pinkerton,* 3 *Edw. C. R.* 70. *Colly.* 298 *et seq.*) In the old action of account the two judgments were quite distinct; and a *scire facias* could have been brought upon the first judgment, and the final judgment might have been reversed on a writ of error, without reversing the judgment *quod computet.* And many things could have been pleaded in discharge, that could not have been pleaded in bar. Under § 150, where the counterclaim arises out of a distinct and independent contract, it should be due, or in its nature presently applicable in reduction of the claim of the plaintiff. Here, as all the assets must be collected in and turned into money, and the debts paid before the final balance can be ascertained, it may be years before the court can know whether any thing will be due to the defendant on the ultimate adjustment of the copartnership transactions. Equitable defenses and counterclaim are now admissible in a variety of cases; but it does not follow that there is no restriction, whatever the incongruity. Under the arbitrary definition of an "action," as given by § 2 of the code, there are many causes of action arising on contract which, under §§ 149 and 150, can be no answer to a suit. Besides, the machinery of the code does not seem adapted to indiscriminate amalgamation of all causes of action and defenses, although

Ives *v.* Miller.

they may come within certain general divisions. It is insisted that in an action founded upon contract, the code permits the defendant to interpose any claim upon which he alleges something should be allowed to him against the plaintiff, if it but arise upon contract, and exist when the suit is commenced; whether legal or equitable, and whether it be or be not liquidated or capable of liquidation. Admitting that under the appellation of "counterclaims," the right of "set-off" is greatly enlarged, still many of the provisions of the code are not quite compatible with such a construction of § 150. The mode of trying issues of fact is not the same in all cases. (*Code*, § 253.) And again, suppose in this case a final settlement of the copartnership is made, it might be very unjust that the whole cost and expense of that proceeding, however great, should depend upon the amount of the recovery ($50 or less) upon this note. (*Code*, §§ 304, 305.) In ejectment, if a vendee ask for specific performance, terms may be imposed; and beside, if he succeed, the plaintiff does not in fact recover. However, it is not necessary to decide this appeal upon any construction affected by considerations of practical expediency; for, if the views we have taken of the rights and interests of copartners are correct, the defendant has shown no valid counterclaim growing out of that connection.

The order granted at special term should be reversed; but as this is one of those novel and perplexing questions naturally consequent upon any attempt to change the entire mode of administering justice, we think the costs had better abide the event of the suit. As this is an appeal from an order, I think the court has discretion as to costs.

Ordered accordingly.

[WASHINGTON GENERAL TERM, January 1, 1855. *Hand, Cady, C. L. Allen* and *James*, Justices.]