## LINDERMAN VS. DISBROW.

COUNTERCLAIM. (1) *Whether liability on partnership account can be set off against individual debt.*

CAUSE OF ACTION. (2) *Instruction to jury.* (3) *Waiver of demand of payment in specific choses in action.*

1. In an action by A. for a debt due him from B. individually, B. cannot counterclaim an amount which (he alleges) will be found due to him, or to him and C., on a settlement of the partnership accounts of A., B. & C.; nor can he have a settlement of the affairs of said partnership in such action, where no peculiar grounds are averred (such as fraud, insolvency, etc.), calling for the interference of equity. *Sprout v. Crowley,* 30 Wis., 187, followed.

2. A.'s demand being for the price of chattels which he claims to have sold to B., the jury were instructed that if said chattels were at the time of such alleged sale, *or ever had been,* partnership property, A. could not recover in this action. *Held,* that there was nothing in this of which B. (the appellant) could complain; but *quære* whether A. might not have been entitled to recover though the chattels had once been partnership property, if by agreement of the partners they had become his individual property again before such alleged sale.

3. Where B. was to pay for such chattels in notes of third parties, A. might recover their price without showing a specific demand of said notes, if he had demanded payment long before suit brought, and after said notes became due, and B. peremptorily refused to make any payment whatever.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action for the unpaid balance of the purchase price of goods alleged to have been sold by plaintiff to defendant in November, 1869. The specific articles, with the agreed price of each, are stated in the complaint as follows: One self-rake reaper, $125; one set of double harness, $30; three plows, $16 each; one hand-rake reaper, $80; two horse cultivators, $17; and it is alleged that at the time they were sold and delivered, defendant paid $15 on account thereof, and agreed to pay the balance, $285, "in good, responsible farmers' notes," which were to be due on or before January 1, 1871. It is further alleged that defendant has utterly failed and refused to pay said sum, or

any part thereof, either in the notes above mentioned or in any other manner, and is now indebted, etc.

The answer, after a general denial, alleges that on or about August 16, 1869, the parties to this action and one Lewis formed a partnership, under an agreement that plaintiff should furnish reapers, mowers, plows, cultivators and other agricultural implements, and that said partners should co-operate in the business of selling said implements in this state; that it was requested by the plaintiff and agreed upon between the partners, that defendant and Lewis should attend the different county, state and other fairs to be held in this state during the fall of 1869, for the purpose of exhibiting and selling said implements; that it was further agreed between said partners that defendant and Lewis should canvass the state for the purpose of selling said implements, hire agents to sell implements, and lease buildings and warehouses for the sale and storage thereof, and that each of said partners should bear one-third of the expenses and receive one-third of the net profits of the business; that in pursuance of this agreement, defendant and Lewis, between August 16 and November 1, 1869, contributed their time, labor and services in carrying on said business, attended various fairs for the purpose of exhibiting and selling said implements, established agencies and leased warehouses for the use of the partnership, etc.; that between August 16 and December 31, 1869, they necessarily expended $141.50 for the services and expenses of agents, $70 for rent of warehouses, and $122.95 for other expenses, and performed labor and services worth $322.90, all in carrying on the business of said partnership; that the self-rake reaper mentioned in the complaint was received by them, about September 15, 1869, and the set of double harness and three plows mentioned in the complaint, about October 12, 1869, all as part of the capital stock of said partnership; that plaintiff has not rendered any services to said partnership as by the terms thereof he agreed to do, nor has he paid his one-third share of the expenses; that the business of the partner-

ship has never been settled, nor any account thereof stated or balance struck; and that said Lewis is a necessary party to this action, that there may be a complete determination of the questions involved therein.

The answer then sets up three counterclaims, for the value of services rendered by defendant to plaintiff at his request, between August 16 and November 1, 1869, in attending fairs in this state to exhibit and sell reapers, mowers and other agricultural implements, and in canvassing the state for the sale of such implements, etc.; for money laid out and expended at plaintiff's request, between August 16 and November 4, 1869, for defendant's expenses in attending fairs and canvassing the state, etc., for the sale of said agricultural implements; and for various sums paid by defendant for the services of agents and the rent of warehouses, due authority from plaintiff being averred. There was a reply in denial of these counterclaims.

At the trial, after plaintiff's evidence was in, defendant moved for a nonsuit, on the ground that no demand of the "farmers' notes" mentioned in the complaint had been shown. The motion was denied. The court also held that it had no authority to bring in Lewis as a party, and that the only question raised in the pleadings was, whether there was a sale of property as alleged in the complaint; and it ruled out all evidence as to the state of the accounts of the alleged partnership.

The court instructed the jury substantially as follows: "It appears from the evidence that in August, 1869, the parties to this action and one Lewis made an agreement to go into partnership for the sale of farming implements, to commence November 1, 1869; but that, by mutual agreement between the parties, this agreement for a partnership was given up. It is claimed by the plaintiff that at the time when the agreement was made which resulted in giving up the agreement for the partnership, he sold to the defendant the property for which this action is brought. He claims that he came to be the

owner of the property in this way: that he bought the self-rake reaper of Manny, after the partnership agreement was made, at Appleton, when it was in the possession of defendant or his agent; that he sent the harness and plows from Rockford; and that the hand-rake reaper and the two two-horse corn cultivators were at Rockford subject to defendant's order. The defendant claims that after the partnership was made, plaintiff sent on all the property for which the action is brought, except the hand-rake reaper and the two two-horse corn cultivators, as partnership property to be used for partnership purposes, and that at the time when plaintiff says he sold him the property, it belonged in fact to the partnership. The plaintiff claims that he sent the plows and the harness to defendant and Lewis, or their agents, to be sold for him; that the proposed partnership had no interest at all in this property, but that it belonged to him. You have to determine from the evidence whether there was a sale of the property in question by plaintiff to defendant. If there was no such sale, your verdict must be for the defendant. If the property was furnished by plaintiff with the intention that it should be used in the partnership business, and was so received by defendant, then your verdict must be for defendant. If the partnership affairs were unsettled at the time it is claimed that this sale was made, still, if the property in question belonged to plaintiff, and had not become and was not partnership property, your verdict must be for the plaintiff."

The court refused to instruct the jury, as requested by defendant, that "the fact that there was a partnership existing between plaintiff, defendant and Lewis from the 16th of August to the first of November, 1869, is admitted by the pleadings, and in this action must be taken as true."

Verdict for the plaintiff, for $311.60; new trial denied; and defendant appealed from a judgment on the verdict.

*Gerrit T. Thorn* and *Norman S. Gilson,* for appellant:

1. The equitable defense, viz., the existence of a partnership

from August 16, 1869, was admitted, not being "expressly denied by affidavit * * * within the usual time of pleading." 2 Tay. Stats., 1611, § 131; *Fisk v. Tank*, 12 Wis., 276, 301; *Martin v. Am. Exp. Co.*, 19 id., 336. The court erred in refusing the instruction asked on this subject, and in refusing to try the equitable issue. *Hegar v. Railway Co.*, 26 Wis., 624. The partnership transactions created "a cause of action" "connected with the subject of the action," and proper to be set up in the answer under subd. 1, sec. 11, ch. 125, R. S. It was an equitable defense and counterclaim, and if true, as admitted, shows that plaintiff had no right to recover at all. The object of the code is to avoid the necessity for two actions in such cases. *Gage v. Angell*, 8 How. Pr. R., 335; *Lemon v. Trull*, 13 id., 248; *Bank of Toronto v. Hunter*, 20 id., 292; *Dobson v. Pearce*, 2 Kern., 156; *Phillips v. Gorham*, 17 N. Y., 270; *Blair v. Claxton*, 18 id., 529; *Cummings v. Morris*, 25 id., 625. 2. The complaint avers that payment was to be made in "farmer's notes." It was conceded that there was no *time* or *place* fixed for the delivery of such notes, and that there was never any *demand* made for them. Plaintiff should therefore have been nonsuited. *Lobdell v. Hopkins*, 5 Cow., 516; *Minor v. Michie*, Walker (Miss.), 24; *Roberts v. Beatty*, 2 Penn., 65; *Rice v. Churchill*, 2 Denio, 145; *Vance v. Bloomer*, 20 Wend., 196; *Barr v. Myers* 3 W. & S., 295; *Martin v. Improvement Co.*, 19 Wis., 552; *McBain v. Austin*, 16 id., 87.

*Gillet & Taylor*, for respondent:

1. The second answer is not set up by way of counterclaim, but as a defense, and as such we had a right to treat it. *Burrall v. DeGroot*, 5 Duer, 382; *Bates v. Rosekrans*, 23 How. Pr. R., 98. It does not state a good counterclaim (*Ives v. Miller*, 19 Barb., 196; 25 N. Y., 625; 37 id., 409); it is bad as such because, while it is founded upon a contract different from and unconnected with that upon which suit was brought, it absolutely requires for its determination the presence of other parties not connected with the contract sued upon. 3 Bosw., 560;

1 Lansing, 488; 25 N. Y., 625; 37 id., 409.   3. If it did not state a good counterclaim, then, though plaintiff did not reply to it, he was entitled to judgment on his complaint. *Van Valen v. Lapham*, 13 How. Pr. R., 243; 5 Duer, 689, 678; 6 id., 53; 19 Barb., 196; 2 E. D. Smith, 50; 4 id., 469.   4. The farmers' notes were payable to plaintiff without demand.   Benj. on Sales, 524.   And again, as the proof shows that defendant was requested to pay for the goods long before suit was brought, and has always refused to pay for them in any manner, no demand of the notes was necessary. *Corbitt v. Stonemetz*, 15 Wis., 170; 20 Pick., 51; 16 id., 327; 3 id., 213; 10 id., 262; 12 How. Pr. R., 55; 1 Ind., 273; 5 id., 184; 4 Chand., 143–159; 1 Wis., 447; 5 id., 400; 1 Keyes, 432; 11 Johns., 1.

DIXON, C. J.   There was no evidence given to prove or tending to prove the counterclaims, called first, second and third, set up in the answer, which were for work, labor and services performed, money laid out and expended, and the hire of agents and warehouses and payment of wages and rents, by the defendant *individually*, and to and for the *individual* use and benefit of the plaintiff, and at his *individual* request.   All the services rendered, moneys expended and wages and rents paid, were on account and for the use and benefit of the partnership, or proposed one, between the plaintiff and defendant and Mr. Lewis, which partnership, the plaintiff claims and the defendant admits in his testimony, was dissolved or abandoned by mutual agreement of the parties about the time active business under it was to commence, and before it can be fully said to have had an actual legal existence.   The case stands, therefore, upon the defense first stated in the answer; and the question arising is, whether a partnership claim of the kind there described can be pleaded by way of counterclaim or set-off to the demand of the plaintiff in an action like this.   A., B. and C. are or have been copartners, and A. owes B. individually a sum of money, for which B. sues him.   Can A. plead in de-

fense the partnership, averring that upon settlement and distribution of the assets between the partners, it will be found that B. is indebted to him, or to him and C., in an amount exceeding the amount demanded in the action; and can he ask a settlement of the partnership affairs in such action, and that the same be decreed, and the rights and liabilities of the respective partners as between themselves ascertained and adjudged, and that the property and effects of the partnership be distributed and divided, and for those purposes that the other partner, C., may be brought in and made a party to the action, in order that in the end his alleged counterclaim, when worked out and its amount determined, may be allowed against or deducted from the demand of the plaintiff in the action, B.? If the intimation contained in *Sprout v. Crowley*, 30 Wis., 187, be correct and be adhered to, then a partnership demand of the kind could not, under ordinary circumstances, or except as sustained and made available on peculiar grounds in equity, be treated or regarded as the proper subject of set-off or as a counterclaim under the statute. It was there said to be "quite clear that in the absence of fraud, or of an express agreement, or of any other circumstances which would render a particular case exceptional, the law is, that one partner has no claim against his copartner individually, on account of partnership transactions, although a final settlement of the affairs of the firm would show a balance in favor of the former. Until such final settlement, the general rule is that the firm, and not the individual partner, is the debtor ; and in such case it cannot be said correctly that there is a debt due from one partner to the other." Reference was made to the case of *Ives v. Miller*, 19 Barb., 196, where the question is fully and ably discussed and numerous authorities referred to, and where it was held that an unsettled partnership claim of the description here pleaded was not a counterclaim against the plaintiff, nor the proper subject of a set-off. We are quite satisfied of the correctness of the conclusion, and that it rules out the defense here set up and sought to be made

and proved upon the trial. No fraud, insolvency or other special facts are alleged or claimed, to take the case out of the general rule, or call into action the equity powers of the court.

So far as it is claimed that the agreement in question, or contract upon which this action is brought, grew out of or was connected with the partnership transactions, such claim is completely negatived by the verdict of the jury. The question was fully and fairly submitted to their determination, whether the property which the plaintiff claimed to have sold to the defendant, and to recover the price of which the action was brought, was at the time of sale or had ever been the property of the partnership; and they were instructed, if they so found, that their verdict must be for the defendant. The court said: 'Again, if you find from the evidence that the property for which the action is brought was sent on by the plaintiff, and furnished by him, with the intention that it should be used in the partnership business and become partnership property, and the same was so received by the defendant, then the plaintiff cannot recover, and your verdict must be for the defendant, if you find from the evidence that the partnership affairs were unsettled at the time they claim this sale was made; but if you find from the evidence that the property in question belonged to the plaintiff, and had not become and was not the partnership property. then the plaintiff is entitled to recover, and your verdict must be for him." The jury must, therefore, have found in favor of the plaintiff and against the defendant upon the question so submitted to them, which submission, it is insisted by counsel for the plaintiff, was more favorable to the defendant than the law authorized or required. Counsel argue, and, as we think, not without strong reason, that if the property in question had once been partnership property, yet if, by agreement of the partners, it had come back to and had become the sole or individual property of the plaintiff, then the plaintiff could have sold it to the defendant and recovered for it under the circumstances of this case, notwithstanding the

Linderman vs. Disbrow.

still continuing existence of some unsettled partnership affairs, transactions or accounts.

These observations dispose of all the exceptions in the case, save that to the denying of the motion for a nonsuit made upon the ground that no demand of the farmers' notes had been proved. They show that there was no error in the exclusion of evidence offered by the defendant, nor in refusing the special request to instruct asked by him. They show also that there was no error in overruling the motion for a new trial, unless it was with respect to the failure to prove a formal demand of the farmers' notes. Upon this last point we agree with counsel for the plaintiff, that no demand of the notes was under the circumstances necessary. The defendant had been requested to pay for the property long before suit was brought, and after the time when, by the terms of the agreement, the farmers' notes were to have become due, and had peremptorily refused to make any payment whatever. He did not put his refusal on the ground that he was to pay in notes which he was then ready to deliver; but it amounted to a denial of his liability, or that he was in any manner indebted to the plaintiff, as the jury have found he was. It is obvious that under those circumstances a formal demand of the notes would have been useless. It would have been refused upon the same ground that the defendant refused to pay any part of the claim; and to turn the plaintiff out of court now for want of such a demand, would be in very truth to sacrifice substance and justice to the very most idle of forms and technicalities.

*By the Court.*— The judgment is affirmed.