## BARBER vs. KILBOURN.

Where B, the president and stockholder of a corporation not engaged in business, the value of the stock of which, consisted in its having title to certain rea estate claimed by it, sold and transferred to K a quantity of such stock and took K's promissory notes for the price, knowing at the time, that the lands of the corporation had been sold and conveyed to a third party for the non-payment of taxes, but which fact he fraudulently concealed from K, and K obtained possession of the lands thus deeded for taxes, after such purchase of stock, and continued to hold it until the title of the grantee in th e tax deed had become barred by the statute of limitations, and B afterwar ds sued K on one of said notes, and K defended on the ground of fraud in the

consideration of the notes. *Held* 1st. That these facts showed that K had not been, and could not be injured by the tax deed, and that if he had sustained nominal damages on account of such fraud, he would not be entitled to recover vindictive damages to punish B by way of example. Whether vindictive damages could be given in such a case if K. had sustained more than nominal damages, *Quære*:

2. The existence of the tax deed was a material fact affecting the value of the stock, which B was bound to communicate to K, and its concealment would have formed a ground for the recovery of damages had he been injured thereby.

In order for a party to recover for a fraudulent representation, or concealment of material facts, upon which he relied, he must show that he has sustained damages thereby.

ERROR to the Circuit Court of *Milwaukee* County.

The case is sufficiently stated in the opinion of the court.

*C. Billinghurst & H. Barber, Jr.*, for plaintiff in error.

1. The relation which *Barber* sustained to the company, as president and as a stockholder therein, prevented him from acquiring any title to the company's lands, through the tax deed, which would not inure to the benefit of the company. Willard's Eq., 189, et. seq.; *Ringo vs. Binns*, 10 Peters., 260; *Van Eps vs. Van Eps*, 9 Paige, 241; *Van Horne vs. Fonda*, 5 Johns. Ch., 406; 4 Cowen, 714. 2. He was not bound to disclose the existence of the tax deed. The lien of the taxes on the lands had been a matter of reccord in Dodge county for more than three years. The transaction on account of which the note was given, was wholly concerning personal property. It was the sale of stock or shares in an incorporated company. R. S., 1849, chapt., 15, § 3; Pr. Laws 1853, 16; *Crouch vs. Cole*, 10 Ind., 448; 16 Ind., 49; 3 Story Rep., 690; 18 Cal. R., 393. He withheld no information and suppressed no facts concerning the shares or stock sold, which he was bound to disclose. Willard Eq., 151; Story on Sales, § 174; 1 Story Eq., § 205, et seq. He was not bound to disclose extrinsic facts affecting the value of the article sold. *Veasey vs. Doton*, 3 Allen, 380; *Laidlaw vs. Organ*, 2 Wheat., 178; 2 Allen, 212; Story on Sales, § 179; Story on Contracts, §§ 517, 519. The existence of the tax title was certainly an extrinsic fact, as

Barber vs. Kilbourn.

affecting the value of the stock, and was no defect in the stock itself. 3. The defendant had sustained no actual damage by the tax deed. At the commencement of this action it was void and worthless, and all claim under it had become barred by the statute of limitations. 4. The court erred in charging the jury that this was a case in which vindictive or exemplary damages might be given. *Stiles vs. White*, 11 Met.; 356; Sedgwick on Damages, 556, 563, and note on page 472; *Singleton vs. Kennedy*, 9 B. Mon., 222; *Whitney vs. Allaire*, 1 Comst.; 305; *Sherwood vs. Sutton*, 5 Mason, 1.

*H. M. Finch & E. Mariner*, for defendant in error.

The rule of damages given by the court below, was the rule applicable to the case, and it was a proper case for exemplary damages. The conduct of *Barber* was wilful and malicious, and in such case the jury may give exemplary damages. Sedgwick on Damages, 477, and note; 4 Wis., 67; 3 Wis., 424; 13 How., U. S., 363; *Allen vs. Addington*, 7 Wend., 9.

*By the Court*, COLE, J. We shall not attempt to go over all the ground covered by the counsel in the argument of this case. A great many exceptions were taken to the rulings of the court, as to the admission or exclusion of testimony. There were likewise a great number taken to the ruling of the court in giving or refusing instructions asked on the one side or the other. The case will now be disposed of in considering chiefly the following portion of the general charge, which we deem erroneous.

Among other things, the circuit judge instructed the jury, that "if they should find the fraud alleged in the answer of the defendant established, they might give him exemplary and vindictive damages, to punish the plaintiff by way of example; that is, damages over and above the damages actually sustained by the defendant, to act as a punishment of the plaintiff, by way of preventing such fraudulent practices." If

we look into the case, we will readily see that it was not one in which vindictive damages could be given.

The action was upon a promissory note given by the defendant to the plaintiff. The defense set up in the answer to defeat a recovery in part or entirely, was, in substance, that the note in suit was given in part consideration of the purchase of a quantity of stock of the Hubbardton Manufacturing Company; that the property of the company consisted entirely of real estate, situated in Dodge county; that the whole value of the stock depended upon the company owning and having a perfect title to such real estate; that the plaintiff had been, prior to the purchase, the president of the company, familiar with the condition of the real estate, and of the title of the company; that the defendant was not familiar with its condition, or the state of the title, and resided at a distance from the county of Dodge; that at the time of the purchase the plaintiff knew that a large amount of the real estate had been sold for non-payment of taxes; that the plaintiff purchased the tax certificates, and caused a tax deed to be executed for the express purpose of divesting the company of its title to the land, and that immediately thereafter, the plaintiff came to Milwaukee, and induced the defendant to purchase the stock of the company, and at the time of such purchase, the plaintiff knowingly and fraudulently concealed from the defendant the fact that a tax deed had been executed of said land so owned by the Manufacturing Company, and knowingly, purposely, designedly and fraudulently concealed the fact from the defendant, that the company had no title to such lands, with the purpose and design of obtaining from the defendant the same price for the stock which he would have paid, had the title to the real estate been perfect in the company. Thus it will be seen, that the defendant resists the payment of his note on the ground of fraud in the original consideration, the plaintiff suppressing the truth of material facts about the subject matter of

the contract, which he was bound to disclose, and by which suppression the plaintiff was damnified.

It is objected that there is no direct allegation in the answer that the value of the stock of the company was depreciated by the existence of the tax deed. But the only natural and fair inference from the matters stated in the answer is, that the stock was greatly depreciated, or that there was a partial failure of consideration in consequence of the fraud practiced. If the plaintiff was guilty of a suppression of the truth upon a matter material to the contract, and about which he was bound to make a full disclosure, and did this with intent to deceive and defraud, the defendant has a good defense to the note to the extent of the damages which he has sustained by the fraud. Whether the jury would be authorized in a case of this character, to give vindictive damages over and above the actual damages sustained by the defendant, is a proposition about which I have considerable doubt. It is undoubtedly a well established principle of the common law, and one recognized by this court, that in a certain class of actions a jury may inflict what are called punitive or vindictive damages, by way of punishment of the defendant for his wanton and lawless conduct. This rule of damages is frequently acted on in actions of trespass to the person, slander, libel, crim. con., &c. But I doubt much its application to a case like this, even where it appears that the defendant has sustained something more than nominal damages by the false representation. There is a still more conclusive reason why it cannot apply here, which is this: Assuming that the existence of the tax deed was a material fact which the defendant had a right to know, yet if he has sustained no actual injury on account of this outstanding title, what cause has he to complain? There must not only be a false representation made with intent to deceive, but this representation must be relied on, and cause damage to a party, before an action will lie. Now, in what way has the defendant been injured by the concealment of the existence of the tax

deed at the time of his purchase of the stock of the company? If he has not been injured by that deed, what ground of complaint has he? Suppose the plaintiff was guilty of a meditated fraud, yet if the defendant has sustained no loss or damage in consequence of it, can he be relieved from the payment of the note, because of this dishonorable conduct? If so, upon what principle of law does the defense rest? Certainly not on the ground that there has been any failure of consideration, or that he has been damnified. Now, it appears from the defendant's own testimony, that he cannot possibly be injured by the tax deed; for, he says, that he has been in the actual possession of the real estate covered by the tax deed, since the purchase. The deed has been recorded more than three years, and under the decisions of this court, no action can be brought upon it. This tax deed then, has not caused, and cannot cause him any injury. And although the defendant may have sustained only nominal damages by the fraud, still the jury were instructed to give vindictive damages to punish the plaintiff by way of example. Now, suppose the plaintiff had sold and conveyed this real estate by deed, with a covenant of warranty, representing his title to be perfect, while knowing a third party had a tax title upon it, and had done this with intent to defraud, what would have been the measure of damages on the covenant, providing the plaintiff had bought in the outstanding title before the action was brought? Could the jury in such a case, over and above nominal damages, give punitory damages by way of punishment of the fraud? We think not. And when it appeared that the defendant had been in the undisturbed possession of the lands covered by the tax deed, and that no action had been commenced within three years from the time the tax deed was recorded, then we think it very clear that no case for punitory or vindictive damages was presented.

It was contended, with much earnestness, by the counsel for the appellant, that the plaintiff was under no legal obligation

to disclose the fact that there was a tax deed upon the property at the time of the sale. It is insisted that the thing sold was not real estate, but the stock of the Manufacturing Company, and that as there was no false representation in regard to the stock, the defendant would have no ground of complaint though injured by the tax deed. That deed is said to be an extrinsic fact or circumstance which the plaintiff was at perfect liberty to conceal, although it might injuriously affect the market value of the stock of the company. We can hardly assent to the soundness of this reasoning. The existence of the tax deed, we are inclined to think, was a material fact, which the plaintiff would be bound to communicate, and the defendant entitled to know, providing the latter had been injured by it. The company was not doing any business, and its stock had no value except as it represented an equitable interest in the real estate. If, therefore, the company had lost its real estate, the stock would have had no value.

It was further contended by the same counsel, that the relation which the plaintiff sustained to the company, as president and stock holder, prevented him from acquiring any title to the company's lands through the tax deed ; which would be valid against the company, or which would not inure to the benefit of the company. The case, it is said, comes strictly within the reason and principle of those decisions which hold that an agent, trustee, or any person acting in a fiduciary capacity, cannot acquire title to the property of the principal. And if he does acquire such title, a court of equity treats him as a mere trustee for the principal, without any beneficial interest in the property. There is certainly much sound reason and excellent sense in this view of the case. But as we have already said that it appeared from the defendant's own testimony, that the statute of limitations had run against the tax deed, it becomes unnecessary to inquire whether the plaintiff ever took any beneficial interest in the lands under that deed, or could have maintained an action upon it. It is no longer

possible for any title under that deed to be set up in hostility to the interest of the defendant or the Manufacturing Company in the lands.

The judgment of the circuit court is reversed, and a new trial ordered.