Van Trott vs. Wiese.

## VAN TROTT vs. WIESE.

EQUITY: FRAUD. (1–4) *Contract. Fraud. Evidence. Estoppel.* (5) *Rescission of contract.* (6, 7) *Counterclaim. Consideration.*

| 36 | 439 |
| 88 | 204 |
| 36 | 439 |
| 92 | 313 |
| 36 | 439 |
| 105 | 268 |

1. V. T. and W., being partners in the drug business, entered into an agreement for the dissolution of the partnership, by which W. was to take all the assets, with certain exceptions, pay all debts of the firm appearing on its books, and a few others mentioned, with the taxes then assessed on the property, and pay plaintiff $8,000, viz., $5,000 down, and the remainder, with interest, in sixty days; and V. T. covenanted not to carry on the same business within certain limits, during a term of five years. There were also some other covenants, and mutual releases. In this action by V. T. to recover the unpaid balance of $3,000 and interest, W. set up, both as a defense and as a ground of counterclaim, false and fraudulent representations made to him by V. T. during the pendency of the negotiations, as to the value of the stock in trade and bank credits of the firm, the debts due it, and the debts which it owed, and as to the correctness of the books of account of the firm, kept by V. T. *Held,* that such defense or counterclaim could not be maintained without showing that W. *relied upon* said representations of V. T., and executed the agreement on the *faith thereof.*

2. The agreement aforesaid was entered into on the 2d of July, 1873. On the 19th of May previous, W. had commenced an action against V. T. for the dissolution of the partnership and a settlement of its affairs, praying for an injunction, receiver and accounting. The verified complaint in such action alleged that the stock of goods was then worth, as near as W. could ascertain, between $12,000 and $14,000,

and that the debts due the firm amounted to at least $3,000; and it charged V. T. with embezzlement of large sums of money of the firm, and with making fraudulent entries and omissions in the account books of the firm, so as to conceal such embezzlement and make the value of the stock in trade appear largely in excess of its real value, etc. V. T. answered said complaint, denying the alleged frauds; and pending that action, the parties negotiated for a settlement of their partnership affairs, which resulted in the aforesaid agreement of July 2d; and said action of W. was discontinued (pursuant to such agreement), without costs to either party. Upon these facts appearing in the present action: *Held*, that it sufficiently appears that plaintiff could not have relied on fraudulent representations which were in direct conflict with his sworn complaint then on file. He had no right to be misled by them, and cannot be heard to aver that he was so misled.

8. As all the fraudulent representations now alleged relate to the same subjects, and are of the same character, as those alleged in the action of May 19th, and were the subject of compromise in the agreement of July 2d, here sued on, and no *new* element of fraud has intervened, the controversy concerning them was forever closed by such agreement. *Kercheval v. Doty*, 31 Wis., 476.

4. The court in this case might properly have directed the jury to return a verdict for the full amount of plaintiff's claim; but it submitted to them the question of defendant's liability. The verdict being in plaintiff's favor, for the full amount of his claim: *Held*, that there was no error to defendant's injury, and a judgment on the verdict must be affirmed.

5. A party who seeks to rescind an entire contract for fraud of the other party thereto, must return, or offer to return, whatever he has received under it. He must rescind *in toto*, if at all.

6. In an action for the price of goods sold, defendant may plead as a defense or counterclaim, that he purchased the goods on the faith of fraudulent representations made by the vendor, as to the quality, condition, etc., of the goods. But this was not such a case.

7. The consideration of defendant's covenant (here sued on) was, not only the sale to him of plaintiff's interest in nearly all the assets of the firm, but also the other stipulations and covenants of plaintiff in the written agreement aforesaid. Defendant, on several occasions, requested plaintiff " to take back the store at $8,000," *i. e.* to repay defendant the $5,000 paid down, and cancel the covenant to pay the $3,000; but he *did not* offer to cancel the said written agreement. *Held*, that for this reason, also, defendant cannot maintain his defense or counterclaim.

APPEAL from the Circuit Court for *Milwaukee* County.

In 1871, the parties entered into a copartnership in the drug business in the city of Milwaukee, and carried on such business until 1873. On the 19th of May, in the latter year, the defendant *Wiese* commenced an action in the county court against *Van Trott*, the present plaintiff, for a dissolution of such copartnership and a settlement of its affairs. The complaint prayed for an injunction, the appointment of a receiver, and an accounting. It alleged that the stock of goods belonging to the firm was then worth, as near as *Wiese* could ascertain, from $12,000 to $14,000 ; that the debts due the firm amounted to at least $3,000; that *Van Trott* had appropriated to his own use large sums of money belonging to the firm, with intent to cheat and defraud *Wiese*, which sums had not been entered on the books of the firm ; and that, to cover and conceal such frauds from *Wiese*, and to make it appear that *Van Trott* had put more capital in the business than he had in fact invested therein, the latter had falsified the account books of the firm, and had also, in an account of stock taken a few months before the action was commenced, fraudulently estimated the value thereof largely in excess of its real value. It is also alleged in the complaint, in a general way, that *Van Trott* had made or caused to be made many erroneous entries in such books of account for the purpose of cheating and defrauding *Wiese*, making erroneous charges against the latter, and omitting to make proper charges against himself.

*Van Trott* answered this complaint, denying all its allegations of fraud.

While that action was pending, the parties entered into a negotiation for a compromise and settlement of their partnership affairs, which negotiations were continued for a month, and resulted in a written agreement, executed by the parties under their respective hands and seals, dated July 2, 1873, which contains the terms of settlement mutually agreed upon. This agreement was to the effect that the partnership was dissolved

by mutual consent, and such action discontinued without costs to either party; that *Wiese* should take all of the assets of the firm, except a mare and colt; that he should pay all of the debts of the firm appearing on its books, and a few others therein mentioned, together with the taxes assessed on such property for the then current year; that *Van Trott* should not, during the term of five years, carry on the business of selling drugs·and medicines within certain specified limits in the city of Milwaukee; and that *Wiese* should pay *Van Trott* $8,000; of which sum $5,000 was paid down, and the balance, with ten per cent. interest thereon, was to be paid in sixty days. The agreement also contained mutual releases, together with certain covenants not necessary to be particularly mentioned.

This action was brought upon said agreement, to recover the unpaid balance of $3,000 and interest thereon, which *Wiese* had therein covenanted to pay. The answer of *Wiese* is to the effect that he was induced to make the settlement, and execute the agreement of July 2d, by the false and fraudulent representations of the plaintiff, made to him during the pendency of the negotiations for such settlement, that the stock in trade of the firm, exclusive of debts owing to it, was worth, at cost prices excluding freights thereon, the sum of $21,000; that the good debts so owing to the firm exceeded the indebtedness of the firm $3,000; and that the firm had about $500 in bank; also, that the plaintiff in like manner represented that the firm owed no debts except those mentioned in such compromise agreement, that after deducting the dead or unsalable stock in trade, the balance was worth, at cost price, $18,000, and that he had at all times during the continuance of the partnership kept true accounts of the business thereof; and that the defendant relied upon the truth of such representations, and entered into the compromise agreement on the faith of them.

The answer then avers that on July 2, 1873, the stock in trade did not exceed $13,500, and, after deducting dead or un-

salable stock did not exceed $8,000 in value; that the amount of the debts owing by said firm exceeded the amount of good debts owing to it, in the sum of $3,000; that the firm then owed the bank $500 instead of having a like sum deposited therein; and that the plaintiff had drawn from the firm during the continuance of the copartnership, the sum of $12,000, not accounted for in the books of the firm. The answer further states that when the defendant ascertained that he had been thus defrauded, he " demanded from the plaintiff the $5,000 paid to him as hereinbefore stated by the defendant, and offered to deliver and transfer back to the plaintiff all of the stock in trade, and all of the goods, wares, merchandise, credits and effects which belonged to said firm and store, on the 2d of July, 1873, and all the interest the defendant had therein, if he, the plaintiff, would pay or deliver back to him the said $5,000, and give up to him or destroy the aforesaid agreement; " but that the plaintiff refused to accept such offer. The answer also contains counterclaims for such $5,000, and for one-half of the $12,000 charged to have been improperly drawn out of the firm assets by the plaintiff.

On the trial, the court sustained numerous objections to testimony the purpose and tendency of which was to show that the frauds charged in the complaint in the action for a dissolution of the copartnership, and repeated in the answer in the present action, had been committed by the plaintiff; and it confined the proofs to the alleged fraudulent representations charged to have been made by him during the negotiations for a compromise.

The testimony tended to show that, soon after July 2, 1873, the stock in trade of the firm, exclusive of dead or unsalable stock, was worth from $9,000 to $14,000 ; that the firm debts were a little more than its credits ; that it had no money in the bank ; and that the plaintiff made the statements and representations set out in the answer.

The court submitted to the jury the questions of fact, whether

the plaintiff made such representations to the defendant during the negotiations; whether they were false; whether the defendant used ordinary diligence to ascertain whether they were true or false; and whether he relied upon them. The court also gave a rule of damages in case they found against the plaintiff on the facts. It is unnecessary to state the instructions more fully.

The jury found for the plaintiff, and assessed his damages at the full amount of his claim; and the defendant appealed from the judgment entered on the verdict.

*S. W. Granger*, for appellant:

1. The evidence showed such fraud on the part of the plaintiff that the court will relieve from it. There is an implied obligation between partners that they are to use partnership property for the benefit of the firm, and not otherwise. Story on Part., §§ 175–177; Collyer on Part., § 196; *Crawskay v. Collins*, 15 Ves., 218, 227; *Honore v. Colmesnil*, 1 J. J. Marsh., 507. If one partner procures a dissolution for his own selfish ends, it is a fraud. Story on Part., § 176; Story's Eq. Jur., §§ 315, 316, 321; *Stoughton v. Linch*, 1 Johns. Ch., 470. One partner is a trustee and agent for the other, and cannot directly or indirectly gain an advantage by his acts over the other. Collyer on Part., § 182; 1 Mad. Ch., 140; *Richardson v. Chapman*, 7 Bro. P. C., 324. 2. The court erred in instructing the jury that defendant must show that the false representations were made with the intent *to induce him to enter into the contract*, and to deceive him. *Foster v. Charles*, 6 Bing., 396; 7 id., 105; *Corbett v. Brown*, 8 id., 33; 1 Moore & Scott, 85; *Hart v. Tallmadge*, 2 Day, 381; *Young v. Hall*, 4 Ga., 95; *Stiles v. White*, 11 Met., 356; *Weatherford v. Fishback*, 3 Scam., 170; *Moens v. Heyworth*, 10 M. & W., 155; *Lindenau v. Desborough*, 8 B. & C., 586; *Maynard v. Rhodes*, 5 D. & R., 266; *Everitt v. Desborough*, 5 Bing., 503; 2 Parsons on Con., 271. 3. The court erred in charging the jury that the representations must be false *and known to be false by the plaintiff*, etc. 2 Parsons on Con., 272,

282, 283; *Miner v. Medbury*, 6 Wis., 297; 1 Story's Eq., 193; *Bennett v. Judson*, 21 N. Y., 238; *Craig v. Ward*, 36 Barb., 377; 40 id., 256; 7 Eng. L. & E., 585; 28 id., 373; *Sewell v. Brougham*, 10 Mass., 202; *Buford v. Caldwell*, 3 Mo., 477; *Snyder v. Findley*, Coxe (N. J.), 48; *Thomas v. McCann*, 4 B. Mon., 601; *Lockridge v. Foster*, 4 Scam., 569; *Dunbar v. Bonesteel*, 3 id.; 32; *Miller v. Howell*, 1 id., 499; *Van Arsdale v. Howard*, 5 Ala., 596; *Monroe v. Pritchett*, 16 id., 785; 9 id., 662. 4. The court erred in rejecting the testimony offered by the defendant. *Johnson v. Parker*, 34 Wis., 596; 1 Hilliard on Torts, 3, 4, 5; 2 id., 145 – 6; *Whitney v. Allaire*, 1 Coms., 305; 1 Hill, 484; *Beecker v. Vrooman*, 13 Johns., 302; 8 Wend., 116; *Woodward v. Thacher*, 21 Vt., 580; *Adams v. Soule*, 33 id., 538. · 5. The court erred in charging the jury to the effect that the measure of damages, in case fraud should be made to appear, is the surplus which the appellant paid over the actual value of the property sold. *Miner v. Medbury*, 6 Wis., 297; *Voorhees v. Earl*, 2 Hill, 288; *Cary v. Gruman*, 4 id., 625; 5 id., 472; *Comstock v. Hutchinson*, 10 Barb., 211; *Milburn v. Belloni*, 34 id., 607; 3 Denio, 406; Sedgwick on Dam., 290; *Fales v. McKeon*, 2 Hilt., 53.

*Johnson & Rietbrock*, for respondent:

1. The settlement put an end to all controversy as to matters prior thereto, growing out of the copartnership. *Parsons v. Hughes*, 9 Paige, 591; *Wood v. Young*, 5 Wend., 620; *Cann v. Cann*, 1 P. Wms., 726; *Curley v. Harris*, 11 Allen, 112; *Levi v. Karrick*, 13 Iowa, 344. 2. The appellant was in no situation to be imposed upon by any representations as to the value of the property. To entitle him to relief, the representations must relate to something in regard to which one party places a known trust or confidence in the other. *Laidlaw v. Organ*, 2 Wheat., 178; *Evans v. Bicknell*, 6 Ves., 173; 1 Story's Eq. Jur., §§ 197, 200; 2 Parsons on Con., 770.

LYON, J. The parties were partners. The defendant came

to the conclusion that the plaintiff was defrauding him of large sums in his management of the partnership business, and commenced an action to dissolve that relation and to wind up the business of the firm.    In his verified complaint in that action, he charged that the present plaintiff had committed acts of fraud, which, if he committed them, stamp him as a swindler and cheat of the worst type.    Within a few days after he commenced such action, the present defendant entered into negotiations with the plaintiff for a settlement of their partnership affairs, which negotiations, a month later, culminated in the agreement of July 2, 1873.    The defendant now seeks to avoid his covenants contained in that agreement, on the ground that he was misled to his damage by certain alleged false and fraudulent representations of the plaintiff, made while the negotiations were in progress, upon the faith of which he claims that he executed such agreement.

The defendant cannot succeed in his defense and counterclaims, unless he relied upon the representations of the plaintiff and executed the compromise agreement on the faith of them. This is an elementary principle.

It seems incredible that the defendant could have relied upon those representations.    No one who has read the complaint in the action commenced by him for a dissolution of the partnership, can believe for a moment that he could have relied upon, or been misled by, any statement which the plaintiff might have made,— that he could have been influenced by the representations of one whom he had so recently denounced under oath, as a liar and a swindler.

Again, the frauds charged in the complaint in the former action consist in the alleged embezzlement of the partnership assets by the present plaintiff, and his acts and representations having for their object to deceive the defendant and to cause him to believe that the value of such assets was greater than it really was.    Without going into details, it is sufficient to say that when he commenced his action in May, 1873, he knew

Van Trott vs. Wiese.

of such alleged embezzlement (if any had been committed), and was fully informed of the fraudulent character and object of the alleged acts and representations. If he knew those facts in May, he was cognizant of them in June and July ; and if, pending the negotiations for a settlement, the plaintiff repeated such fraudulent representations, the defendant had no right to be misled by them, and cannot be heard to aver that he was so misled.

But we do not choose to rest our decision upon these considerations alone. There are other facts in the case equally fatal to the defense and counterclaims contained in the answer.

The real issues in the action for a dissolution of the copartnership were, whether the plaintiff had fraudulently appropriated to his own use a portion of the firm property, and whether he had falsified the account books of the firm, and had made false statements to conceal the fact of such conversion, and to cause the defendant to believe that the capital of the firm was larger than it really was. This was the scope of the issues in that action. The compromise and releases of July 2d were necessarily as broad as the controversy which was thereby settled. The fraudulent representations which it is claimed the plaintiff made during the negotiations for a settlement, were of the same character, were made for the same object, and related to the same subjects, as those charged against him in the complaint in the former action. Whatever apparent differences between them may exist, all of the alleged fraudulent representations relate to the value of the capital stock of the firm. The compromise was made with reference to the averments of fraud in the complaint in the former action, and the denial thereof in the answer, and necessarily prevents any further litigation of that issue, if such compromise was fairly made and no new element of fraud intervened. See *Kercheval v. Doty*, where the grounds of this rule are forcibly stated by Chief Justice DIXON.

We have already seen that no new element of fraud inter-

vened in the settlement. The plaintiff merely adhered to his former statements, which the defendant had denounced as false and fraudulent. Occupying towards each other a hostile position, neither yielding to the views of the other, they negotiated a settlement of all their partnership business, and executed mutual releases in respect thereto. Under such circumstances the law is that the old controversy is forever closed. The learned circuit judge would not have erred, therefore, had he directed the jury to return a verdict for the full amount of the plaintiff's claim. As a matter of course, the defendant could not have been injured by the instructions which the court gave to the jury, even though it be conceded that the same were erroneous in some particulars. Hence it is quite unnecessary to review those instructions.

There is another view of the case which leads to the same result. A party who seeks to rescind an entire contract, because of fraud committed by the other party thereto, must return, or offer to return, whatever he has received under it. "He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind *in toto* if at all." Per BEARDSLEY, J., in *Masson v. Bovet*, 1 Denio, 74. See also *Shields v. Patty*, 2 Sandf. S. C., 262; *Hunt v. Silk*, 5 East, 449; *Riddle v. Gage*, 37 N. H., 519; 2 Parsons on Con., 679 and notes; Comyn on Con., 48.

It is not questioned that, in an action to recover the price of goods sold, the defendant may plead thereto, as a defense or counterclaim, that he purchased the goods on the faith of fraudulent representations made by the vendor as to quality, condition, etc. *Barbour v. Kilbourn*, 16 Wis., 485; *Cruemer v. Wood*, 102 Mass., 441; Sedgwick on Damages (6th ed.), 358. But this is not such a case. No specific price was agreed upon for the stock in trade, or for the credits of the firm or the good will of the business, but all of the covenants of both parties constitute an entire and indivisible contract. The consideration of the defendant's covenants (the obligations of which he

seeks to repudiate) is not only the sale to him of the plaintiff's interest in nearly all of the assets of the firm, but the dissolution of the copartnership, the settlement and release of all claims of the plaintiff on account thereof, the discontinuance of the action to dissolve the copartnership, without costs, and the plaintiff's covenant not to engage in the business of selling drugs and medicines within certain limits in the city of Milwaukee for the term of five years.

The testimony tends to show that soon after July 2, 1873, the defendant, through an agent, requested the plaintiff to take back the store at $8,000; that is, to repay the $5,000 which had been paid to him by the defendant, and to cancel the defendant's covenant to pay the $3,000, for the recovery of which this action was brought. The same proposition, with more particularity of detail, was made on the trial, and on both occasions was refused by the plaintiff. But there was no proof of any offer, and no such offer was made on the trial, to cancel the agreement of July 2, 1873, and thus relieve the plaintiff from all of his covenants therein contained, although such an offer is averred in the answer. The defendant should have offered to cancel such agreement and to release the plaintiff from all of the obligations thereof. Not having done so, the case comes within the rule of rescission above stated, and the defense and counterclaims interposed by the defendant are not available in this action.

In the consideration of this case, we have been, and are, strongly inclined to the opinion, that, under the peculiar circumstances thereof, the only remedy of the defendant is by a proceeding in equity to set aside the agreement of July 2d for fraud, to the end that the action for a dissolution of the partnership may be revived in some form, and all of the equities of the parties in the premises may be determined by the adjudication of the court. But this proposition was not argued by the learned counsel, and we do not decide it.

*By the Court.* — The judgment of the circuit court is affirmed.