## IN THE MATTER OF RACINE COUNTY COURT ORDER AGAINST JUDGE JOHN W. REYNOLDS.*

*Argued February 23, 1973.—Decided April 17, 1973.*
(Also reported in 206 N. W. 2d 428.)

For the petitioner the cause was argued by *David J. Cannon,* United States attorney.

For the respondent the cause was argued by *Robert K. Weber,* assistant corporation counsel for Racine county.

PER CURIAM.   On February 19, 1973, Judge JOHN W. REYNOLDS of the Federal District Court for the Eastern District of Wisconsin, by United States Attorney David J. Cannon, petitioned this court for a writ of prohibition against the Honorable RICHARD G. HARVEY, JR., Judge of the County Court of Racine County. This petition asked for a writ commanding Judge HARVEY to desist and refrain from any further proceedings in a matter pending in the county court of Racine county against Judge JOHN W. REYNOLDS. An order to show cause was issued to Judge HARVEY why a writ should

---

* Motion for reconsideration denied on May 11, 1973.

not be granted. The matter was heard and taken under advisement.

On November 9, 1972, in the pending divorce action Judge HARVEY ordered Attorney Sutton to show cause why he should not be in contempt of court in seeking federal court aid in a matter then pending in his court and which the judge had under advisement. Attorney Sutton promptly filed a petition in the federal court (No. 72–C–626) to remove the contempt proceedings. On January 26, 1973, Judge TEHAN granted Judge HARVEY's petition to remand the contempt proceedings on the ground there was no substantial federal question involved in the contempt proceeding.

Sutton then commenced an original action in the federal court of the eastern district of Wisconsin (No. 73–C–40), alleging his civil rights were being violated and seeking an injunction under 42 USCA 1983, against Judge HARVEY for holding him in contempt of court. Judge REYNOLDS heard the motion for a temporary injunction on January 31, 1973, but on that day Judge HARVEY ordered Judge REYNOLDS to show cause why Judge REYNOLDS should not desist from interfering with the contempt proceeding in the divorce action pending in Judge HARVEY's court. On February 7, 1973, Judge REYNOLDS filed a petition to remove this order to show cause on the basis that sec. 1441 (a) and (b) and sec. 1442 (a) (3) of Title 28 USCA were applicable. This case became No. 73–C–64.

The majority of this court views this application of Judge REYNOLDS for a writ of prohibition under the superintending power of the supreme court as presenting a very narrow issue. The narrow issue is whether Judge HARVEY can ignore the removal of his order requiring Judge REYNOLDS to show cause why Judge REYNOLDS should not desist from interfering with the contempt

proceeding, because he believes the federal removal statute is unconstitutional.

We do not think that Judge HARVEY can decide the constitutionality of 28 USCA 1446 (e) in any case now pending before him or ignore the section because of his personal belief that it is unconstitutional. Consequently, whether this removal has merit. or not is a question to be determined by the federal court of the eastern district of Wisconsin on the motion to remand and Judge HARVEY cannot require Judge REYNOLDS to appear in his court to show cause why he should not desist from interfering with the jurisdiction of the county court of Racine county until this question has been decided.

On the narrow facts presented here, we grant a writ of prohibition to enjoin the Racine county court from requiring Judge REYNOLDS to show cause why he is. not in contempt of court. Let the writ issue.

HALLOWS, C. J. *(concurring)*. It is impossible to understand the issue involved in this application for a writ without considering all the background facts which have led up to this important controversy.

In September of 1970, a divorce action entitled *Wagner v. Wagner* was commenced in the county court of Racine county. After being partially heard by a county judge, it was transferred on January 24, 1972, to County Judge RICHARD G. HARVEY, who tried the case on its merits in September, 1972. He took the matter under advisement, during which time the father was denied visitation rights to the child of the parties on the ground it was for the best interest of the child, temporarily at least, not to have contact with the father. A petition by the father through Attorney Robert Sutton was then filed with this court for leave to commence an original action against Judge HARVEY to grant visitation rights, pending his decision on the merits of the divorce. That petition was

denied on September 28, 1972, on the ground this court would not interfere with the trial court which had the matter under advisement until that court unreasonably delayed the disposition of the case; the per curiam opinion suggested sixty days from September 25, 1972, would be reasonable. However, Attorney Sutton would not wait for that reasonable period to expire and on October 10, 1972, commenced an action in the federal court for the eastern district of Wisconsin (No. 72–C–556), seeking temporary visitation rights for the father of the minor child.

On November 9, 1972, in the pending divorce action Judge HARVEY ordered Attorney Robert Sutton to show cause why he should not be in contempt of court in seeking to have the federal court determine visitation rights of the father—an issue which Judge HARVEY had under advisement. Attorney Sutton promptly filed a petition in the federal court (No. 72–C–626) to remove the contempt proceedings. Upon the automatic removal under 28 USCA 1446 (e), Judge ROBERT E. TEHAN, Senior Judge, United States District Court, on December 4, 1972, stayed the contempt proceedings in the divorce case pending before Judge HARVEY, who then filed a petition to remand the removed contempt proceedings.

While this matter was pending in the federal court, Attorney Sutton again applied to this court for an order to require Judge HARVEY to decide the visitation rights in the divorce case; but before this court could act this petition became moot because Judge HARVEY on December 22, 1972, made and entered a final decree in the divorce action determining all matters including visitation rights excepting only the contempt proceedings against Attorney Sutton for seeking to bring pressure upon him to decide the case by seeking to have the visitation rights adjudicated in the federal court (Case No. 72–C–556). On January 26, 1973, Judge TEHAN granted Judge

HARVEY'S petition to remand the contempt proceedings on the ground there was no substantial federal question involved in the contempt proceeding.

Sutton then commenced an original action in the federal court of the eastern district of Wisconsin (No. 73–C–40), alleging his civil rights were being violated and seeking an injunction under 42 USCA 1983, against Judge HARVEY for holding him in contempt of court. Judge REYNOLDS heard the motion for a temporary injunction on January 31, 1973, but on that day Judge HARVEY ordered Judge REYNOLDS to show cause why Judge REYNOLDS should not desist from interfering with the contempt proceedings in the divorce action pending in Judge HARVEY's court. On February 7, 1973, Judge REYNOLDS filed a petition to remove this order to show cause on the basis that secs. 1441 (a) and (b) and 1442 (a) (3) of Title 28 USCA were applicable. This case became No. 73–C–64.

On February 6, 1973, Judge REYNOLDS rendered a written decision in Case No. 73–C–40, in which he granted a temporary injunction against Judge Harvey; Judge REYNOLDS also dismissed as moot Case No. 72–C–556 to determine visitation rights, in view of Judge HARVEY's decision on the merits in the divorce case. Judge REYNOLDS also dismissed as moot the removal case (No. 72–C–712) of the order to show cause on Judge TEHAN entered by Judge HARVEY, in view of Judge TEHAN's decision remanding the Sutton contempt proceedings. As a result, the only existing cases in these two courts are: (1) The divorce action in the Racine county court; (2) the contempt proceedings against Sutton removed to the federal court in which a petition for remand was filed on February 22, 1973, by Judge HARVEY (a decision on this motion has not been made by the federal court), and (3) the order to show cause on Judge REYNOLDS for interfering with the county court which has been re-

moved to the federal court, and which removal is not recognized by Judge HARVEY on the ground 28 USCA 1446 (e) is unconstitutional in not giving a hearing prior to removal (the motion for remand of this case has not been determined by the federal court), and (4) the action by Mr. Sutton against the county court in Racine county (Case No. 73–C–40) for an injunction to protect his alleged civil rights.

The majority of this court viewed this application of Judge REYNOLDS for the writ of prohibition as presenting a very narrow issue and not the broader issue of clashing jurisdictions of state and federal courts in the attempted enjoining of judicial officers of one sovereignty by the judicial officers of another sovereignty. We have presented a federal court enjoining a state court and a state court ordering the federal judge to show cause why he should not stop interfering with the state court's right to perform its judicial function. Judge HARVEY takes the position that Attorney Sutton's suit in the federal court, claiming his civil rights are in jeopardy by the contempt process of the county court of Racine county, is a subterfuge action to avoid the decision of Judge TEHAN that the contempt proceedings did not raise any substantial federal question. Judge HARVEY's position is that if Mr. Sutton is dissatisfied with Judge TEHAN's ruling, this proper remedy was to appeal, not to start another suit in the same federal court for the same thing. Judge HARVEY further takes the position that the federal court cannot interfere with the judicial process of a sovereign state by the method of enjoining a judge from performing his judicial duties.

Mr. Sutton has not been held in contempt of court. The inquiry is that he show cause why he should not be held in contempt for seeking aid in a federal court in a divorce matter over which Judge HARVEY claims the federal court has no jurisdiction. Thus the federal court

action, Judge HARVEY claims, is an interference with his court, just as Judge REYNOLDS claims in his opinion of February 6, 1973, that Judge HARVEY's orders on him threaten to disrupt the orderly proceedings of the federal court. Naturally, injunctions by a court of one sovereignty enjoining the judicial functions of a court of another sovereignty are interference. It is a two-way street. Courts ought not to enjoin other courts. Equity has traditionally operated through the control of the parties, not directly on the government.

I do not think that Judge HARVEY can decide the constitutionality of 28 USCA 1446 (e) in any case now pending before him or ignore the section because of his personal belief that it is unconstitutional. Nor do I reach the question of whether under sec. 1441 (a) and (b) contempt proceedings of an attorney in the state court can be removed to the federal court. I note, however, those sections deal with civil actions brought in a state court of which the United States district courts have original jurisdiction. A contempt proceeding would not seem to be such an action. However, the removal of the order to show cause proceeding against Judge REYNOLDS is a different matter and is founded on 28 USCA 1442, which provides:

"(a) A civil action or criminal prosecution commenced in a state court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(3) Any officer of the courts of the United States, for any Act under color of office or in the performance of his duties."

Consequently, whether this removal has merit or not is a question to be determined by the federal court of the eastern district of Wisconsin on the motion to remand. Judge HARVEY should not require Judge REYNOLDS to

appear in his court to show cause why he should desist from interfering with the jurisdiction of the county court of Racine county in respect to that issue.

This whole unfortunate conflict between our state court and federal court of the eastern district of Wisconsin could have been avoided if Mr. Robert Sutton, the attorney for Mr. Wagner, had not attempted to play the federal court against the state court while the state court was promptly proceeding to adjudicate a case over which it had exclusive jurisdiction. There can never be harmonious relationships between federal and state courts if attorneys are going to make application to both courts at the same time and both courts take jurisdiction and attempt to enjoin each other. I do not approve of what Attorney Sutton has done. The orderly judicial process of our state courts and the administration of justice in our sovereign state cannot be maintained if attorneys are going to seek relief, whether justified or not, in the federal court in order to get adjudicated claimed rights which are under advisement by state judges. Judges should not allow attorneys to play one court against another and judges should not allow themselves to be put in such position. In the summer of 1970 Chief Justice WARREN E. BURGER of the United States Supreme Court suggested the creation in each state of a Federal-State Judicial Council to establish amicable relationship between the federal courts and the state courts and to ameliorate the existing abrasive conflicts between them. In January, 1971, the author of this opinion called an organizing meeting of state and federal judges to establish such a federal-state judicial council. Such a council was created composed of two members of this court, a representative of each federal circuit and the federal court of appeals and three representatives of the state trial judges. This council holds

semiannual meetings; I think more meetings must be held.

Recently, in *Just v. Marinette County* (1972), 56 Wis. 2d 7, 201 N. W. 2d 761, in an attempt to reduce the area of conflict between the federal and state courts, this court changed its position and allowed all trial courts to decide and declare state statutes unconstitutional if the issue of constitutionality was properly raised and the issue adequately briefed.

Perhaps one of the more potent points of abrasive conflict is the unfortunate opinion of the United States Supreme Court allowing federal district judges to overrule in effect a deliberate decision of a state supreme court arrived at through a time-consuming and carefully deliberated judicial process by seven justices all sworn to uphold the United States Constitution.

The present federal law on habeas corpus requires a state convict to exhaust his state remedies before applying to the federal court for relief. This makes the federal district judge a supreme court over the state supreme court. This duplication of judicial work is a needless waste of taxpayers' money. One solution would be for the state courts to refuse to pass upon a federal constitutional question, thus saving the time and effort of the state court in such cases which will end up in the federal courts anyway. If there is to be harmony and the avoidance of conflicts, the jurisdiction of the federal district court should be redefined. While exhaustion of state remedies is a form of abstention, enlightened and voluntary abstention and the recognition of comity by the federal judiciary would relieve a great deal of conflict without the surrender of any jealously guarded jurisdiction. I think its wrong, if there is to be harmonious relationship between sovereign state and the federal government to allow one man, who may because of his more liberal personal views of the content of constitu-

tional language, to set at naught the work of seven state justices. At least it takes three federal judges to declare a state statute unconstitutional. I see no great improvement in state and federal judicial relationships until this one-judge rule is abolished. The present state of affairs with frequent interference with the orderly state judicial process does not enhance public confidence and respect for either federal or state courts.

While not in point, this case recalls to mind the historical conflict of jurisdiction [1] involving this court and the United States District Court for the Eastern District of Wisconsin over a century ago. For those interested in a bit of fascinating legal history, *see* Beitzinger, *"Federal Law Enforcement and the Booth Cases,"* 41 Marquette Law Review, p. 7–32 (Summer, 1957). *See also: Edward G. Ryan, Lion of the Law,* p. 130, *et seq.,* by Alfons J. Beitzinger.

I am authorized to state that Messrs. Justice CONNOR T. HANSEN and ROBERT W. HANSEN join in this concurrence.

---

[1] *In re Sherman M. Booth* (1854), 3 Wis. 1 (*2) ;
*In re Sherman M. Booth* (1854), 3 Wis. 54 (*49) ;
*Ex parte Sherman M. Booth* (1854), 3 Wis. 134 (*145) ;
*In re Booth and Rycraft* (1855), 3 Wis. 144 (*157) ;
*Ableman v. Booth* (1859), 11 Wis. 517 (*498) ;
*United States v. Booth* (1859), 62 U. S. (21 Howard) 506, 16 L. Ed. 169 ;
*Arnold v. Booth* (1861), 14 Wis. 195 (*180) ;
*Booth v. Ableman* (1863), 16 Wis. 485 (*460) ;
*Booth v. Ableman* (1864), 18 Wis. 519 (*495) ;
*Booth v. Ableman* (1865), 20 Wis. 23 (*21) ;
*Booth v. Ableman* (1866), 20 Wis. 633 (*602).