## SHEPHERD vs. MIL. GAS LIGHT COMPANY.

### ERROR TO CIRCUIT COURT, MILWAUKEE COUNTY.

Heard April 10.]                                    [Decided June 4, 1860.

### *Agent and Principal—Waiver.*

Where the regulations of a gas company required applications for supplies of gas to
be in writing, stating the probable number of burners required, and signed by
the party, though the company may insist on this condition, yet it may waive
it by assigning some other cause; and when sued for not supplying gas, and it
do not plead the refusal of the plaintiff to make the written application, the
company cannot insist on the plaintiff's neglect to make the same.

It is competent for the secretary and general superintendent of a gas company, who
acts for the company in relation to furnishing consumers with gas, to waive a
regulation of the company requiring applications for supply to be in writing.

A general agent and manager of a non-resident merchant, who has charge of a mer-
cantile house and business in Milwaukee, may direct a clerk of the house to
make a demand to be supplied with gas by a gas company; and such demand
would be as effectual as if made by the non-resident himself, or his general
agent.

This is another action for the same cause as that decided
in 6th Wis. Reports, 539, between these same parties, com-
menced in the circuit court. The complaint sets forth that
the plaintiff in error, who was the plaintiff below, was, in
1857 and 1858, doing business as a merchant, having a store
and shop on East Water street, in the city of Milwaukee, in
which he sold hard ware, and manufactured and sold tin
ware. That in December, 1856, he had caused the store and
shop to be fitted up with gas apparatus and fixtures, suitable
for the use of illuminating gas, and in readiness to receive it.
That the defendant was a corporation, created by the laws of
this state, engaged in manufacturing and selling illuminating
gas, in the city of Milwaukee. That its pipes were laid in
East Water street, in front of the plaintiff's store, convenient
to connect with the plaintiff's apparatus. That on the 7th of
February, 1857, the plaintiff demanded of the defendant's
agent, authorized for that purpose, that gas should be fur-
nished to the plaintiff, to light the store and shop, the plaintiff

at the same time tendering five dollars. The defendant refused to accept the money, or to furnish the gas, and never afterwards did either. The complaint claims damages for the refusal, and the consequent injury to his business.

The answer admits the incorporation and business of the defendant, and the fitting up the plaintiff's store with the suitable apparatus for the use of gas, and denies the other allegations in the complaint.

On the trial, before Judge McArthur, the defendant proved the foregoing allegations. The demand was made on behalf of the·plaintiff orally, at the Gas Company's office, by Fred. J. McKenzie, the book-keeper and salesman of the plaintiff. The plaintiff resided in Buffalo, and Clarence Shepard, of the city of Milwaukee, managed his business, and was his general agent in the latter place. Mr. McKenzie was also plaintiff's general agent, subject to Clarence Shepard's instructions. The demand and tender were made by the direction of the latter, without any directions from the plaintiff in person. The request was made at the defendant's office, upon M. W. Clark, then secretary, superintendent, and general agent of the company. His answer was, that the plaintiff " could have the gas when he would sign the rules and regulations, and not until then." He had previously given to Mr. McKenzie a book purporting to contain the rules and regulations of the company. The first rule is as follows : " All applications for a supply of gas must be made in writing, at the office of the company, the applicant signing the regulations, and stating the probable number of burners that he may require."

Some conversation followed this demand and refusal, in which Clark complained that the plaintiff should have procured his gas fixtures to be put into the store by Clark, who was then engaged in the business of supplying and putting in gas fixtures, either in his own behalf, or on the defendant's. That subject, and the rules and regulations, were somewhat discussed. Mr. McKenzie had several conversations with the officers of the company, in regard to furnishing gas, and in none of them was any objection ever made, or condition imposed, on behalf of the company, except that the plaintiff must sign the rules and regulations of the company, which he refused to do. The plaintiff offered much evidence on the subject of the damage sustained by him.

The plaintiff's counsel then rested, and the defendant's

counsel moved for a nonsuit, for the reasons following: 1st. That no application *in writing* was made by the plaintiff for gas, as required by the first rule of said company, and said plaintiff did not state, in writing or otherwise, the probable number of burners he might require.    2d. Because McKenzie was not the agent of the plaintiff to make the demand. 3d. The plaintiff's proof was insufficient to warrant a verdict for him.

Which motion was granted, and there was judgment of nonsuit for the defendant, on which the plaintiff has brought error.

*Smith & Soloman,* for the plaintiff.

*By the Court,* COLE, J.    We think the nonsuit in this case was improperly granted.    But after the full examination given to the case between the same parties, involving substantially the same questions of law as are presented by this record, which is reported in 6 Wis. R., 539, we do not deem it necessary to state our views at length.    The decision in 6 Wis. appears to be applicable to this case, and decisive of it.

It is insisted that the new suit was right, because the plaintiff here, and plaintiff below, failed to show, as a part of his case, that an application in writing was made for the gas, as required by the first rule of the company, stating therein the probable number of burners he would require or use; and, it is suggested on the brief of counsel, that the nonsuit was granted mainly upon this ground.    In the former case, in considering the rules and regulations which the company might rightfully impose and require an applicant to subscribe to, as a condition precedent to his right to demand the gas, the court said it could see no objection to one requiring applications to be made in writing.    We think so still; and had the company placed its refusal to furnish the gas upon the ground that the plaintiff did not, or would not, make application therefor in writing, the case would have been different.

But it did no such thing. On the contrary, the witness, McKenzie, testified that when he applied to the superintendent, Clarke, for gas, and tendered him five dollars, that Clarke refused the money, and said, " we could have gas when we signed the rules and regulations, *and not till then.*" No other condition was required, except the signing of the rules and regulations, some of which this court has pronounced unreasonable and unjust, and of a character which the company had no right to require applicants for gas to subscribe to. Now, should this not be deemed a waiver on the part of the company of the right to insist upon a written application? The superintendent said the gas would be refused until the rules and regulations were signed; that was the position of the company at the time of the demand, and it ought not now to be permitted to change its ground, and say the plaintiff should have made an application in writing, or done something else not then required or insisted upon. It seems to us very clear, that when the company, by its superintendent, said that the gas would not be furnished until the rules and regulations were signed, that it waived the right to require a written application.

Some question has been made as to the right or power of the superintendent Clark to waive a written application. But can there be any serious doubt upon that point? Clark's name was attached to the printed rules, as secretary and superintendent, and his was the only name attached to them. He was at the office of the company exercising a general control over its business and affairs. Applications for gas were made to him, and he assumed to act for and refuse for the company. We think it was competent for him to waive the written application as we have held he did distinctly do by saying that the gas would not be furnished until the regulations were signed.

Neither do we think there can be any doubt as to whether

McKenzie was the agent of the plaintiff to demand the gas. He testified that he was the general agent of the plaintiff, under Clarence Shepherd's instruction, and he was directed by the latter to demand the gas. The plaintiff was carrying on an extensive mercantile business in Milwaukee. He resided in Buffalo and Clarence Shepherd was his general agent and managed his business in Milwankee. Now if it should be assumed that McKenzie had no direct authority from the plaintiff to make the demand, yet from the nature of Clarence's agency, he would have an implied power to authorize McKenzie to make the demand in behalf of the principal. It could not be supposed that Clarence Shepherd was to do everything connected with the plaintiff's business in person. This would be impossible.

It follows from these views, that *the judgment of non-suit must be set aside and a new trial ordered.*