Cunningham vs. Brown and another.

Cunningham vs. Brown and another.

PRACTICE. *(1) Review of findings, on appeal. (6) Costs, against vendor's mortgagee, in action for specific performance of contract to sell land.*
CONTRACTS: SALE OF LAND. *(2, 3) Price determinable in the future. (4) Waiver, by vendor, of tender and demand. (5) Possession of land as notice of vendee's rights.*

1. It is the settled practice of this court not to disturb findings of the circuit court upon questions of fact, except upon a clear preponderance of evidence against them.
2. It is not necessary to the validity of a contract of sale, that it should determine the price in the first instance; but it may appoint a way by which it shall be thereafter determined, and in that case the contract will be perfected when the price has been so determined.
3. Where, therefore, a contract for the sale of a village lot provided that the price should be the same as the price of sale of the first lots which should be sold in the vicinity, and lots adjoining the one in question were sold before the action was commenced: *Held,* that the contract was thus rendered certain.
4. Where, by the contract of sale, land was to be paid for in part by labor and services, and, upon the vendee's demand for an adjustment of the amounts paid and unpaid, and a conveyance, the vendor repudiated the

Cunningham vs. Brown and another.

contract and ordered him to quit the possession, this was a *waiver* of any further tender or demand before suit by the vendee for specific performance.

5. Actual, open and notorious possession of land is constructive notice of the possessor's rights (*Wickes v. Lake*, 25 Wis., 71); and where C. was in possession of land under a parol contract of sale, and M. took from C.'s vendor a mortgage of the land, with knowledge of C.'s possession, but in ignorance of his rights as purchaser, the mortgage was void as against C.

6. Where the vendor and his mortgagee resisted C.'s action for a specific performance, joining in an answer denying his rights, it was not an abuse of discretion for the court to award *costs* against them *jointly*, and to set off the costs against the unpaid balance of the purchase money. [RYAN, C. J., dissents as to this point.]

APPEAL from the Circuit Court for *Sauk* County.

Action to compel a specific performance of an alleged parol agreement of the defendant *Brown* to convey to plaintiff a certain lot in Brown's addition to the village of Baraboo. The facts found by the court are as follows: On the 24th of March, 1873, plaintiff and *Brown* entered into a parol agreement for the sale of said lot by the latter to the former, *Brown* agreeing to convey the title in fee simple free from incumbrances, on receiving payment therefor. Said addition had but recently been surveyed, and the ground was vacant, unimproved and uncultivated; and the price then agreed to be paid for the lot was "the same price for which the first lots in the vicinity should be sold." It was further agreed that plaintiff should have immediate possession of the lot as purchaser, with the right as such to improve it; and that some indebtedness then due the plaintiff from *Brown* should be applied in part payment for the lot; and also that any further labor or services which plaintiff might thereafter render for *Brown*, and any money paid or furnished to *Brown* by the plaintiff, should be applied upon such payment, and that plaintiff should have any reasonable time he might require in which to pay for the property. Thereupon plaintiff immediately took possession of the lot as purchaser under said agreement, cleared and fenced it, excavated a cellar, and built a substantial frame

dwelling house, a cistern and the usual outhouses and appurtenances, and planted fruit trees, expending in permanent improvements about $600, and moved into said dwelling house in 1873, and has ever since lived in it as his home, claiming as such purchaser. Plaintiff has rendered services for *Brown* and paid money to him, which, under the agreement, ought to be applied toward the purchase of the lot, to the amount of $92; but from this there should be deducted $40 of the bill claimed by *Brown* in his answer against plaintiff, and also $9.90 for taxes on the lot paid by *Brown* since plaintiff's purchase, leaving $42.10 to be applied on the purchase price of the lot. After said agreement of purchase, and before the commencement of this action, two lots adjoining that sold to the plaintiff, and in the same block, were sold for $125 each; and the plaintiff and *Brown* afterwards recognized that as the price of plaintiff's lot. On the 21st of February, 1877, *Brown* fraudulently represented to the defendant *Murphy*, that he, *Brown*, was the owner in fee of said lot and the improvements and appurtenances, and that plaintiff was his tenant, paying rent at $5 per month, and thereby induced *Murphy* to loan him $200 on his note secured by mortgage on said lot with another lot in said addition, which mortgage was executed and recorded on the day last mentioned. At that time, plaintiff was in the actual, open, exclusive and notorious occupation of said lot, to the knowledge of *Murphy*, who made no inquiry as to plaintiff's rights from him or his family living on the premises. Said mortgage was made, delivered and recorded without plaintiff's knowledge, " and is null and void as to him, unless *Murphy* might be entitled thereby to any surplus of the purchase price that may remain due *Brown* from the plaintiff upon the judgment to be rendered herein; but the defendant *Murphy* did not ask any such relief in his answer, nor on the trial and submission of this cause." Upon learning the existence of said mortgage, plaintiff made an effort to settle his account with *Brown*, and to have what might be due

Cunningnam vs. Brown and another.

him allowed on the purchase price of the lot, and demanded that *Brown* convey the premises to him on his paying the balance, if any, that might be due therefor; but *Brown* refused to settle or give a deed, denied that he had ever agreed to sell the lot to plaintiff for any price or on any terms, and insisted that the improvements thereon belonged to him, *Brown*, and that he had rightfully mortgaged the same.

Upon the facts thus found, the court held that the plaintiff was entitled to a decree in his favor upon the following terms: Plaintiff was to be charged with the balance of the purchase price of the lot, and interest at the rate of seven per cent. from March 24, 1873, to the date of the decree; his costs herein were to be taxed and applied in payment of said remaining purchase money and interest; and if the amount of the latter was in excess of the costs, then, on depositing such excess with the clerk of said court, to be paid over to *Brown* or *Murphy* as the court might direct, the title to the premises was to be passed to the plaintiff, his heirs and assigns forever, in fee simple, free from incumbrances; if said costs should equal said unpaid purchase money and interest, a like decree was to be entered; and if the costs should be in excess, then, in addition to a like decree, judgment should go' against defendants for such excess.

Judgment accordingly; from which defendants appealed.

For the appellants, a brief was filed by *Gill, Bashford & Spilde*, and the cause was argued orally by *Mr. Bashford*. After discussing at length the questions of fact, they contended, 1. That plaintiff was not entitled to judgment as against *Murphy*, who took his mortgage in good faith, for a valuable consideration, in the exercise of due diligence, and without any notice of the alleged contract and purchase. Upon the facts found, plaintiff and *Murphy* are both innocent *bona fide* purchasers, the one exercising no greater diligence, or guilty of no greater negligence, than the other. Our statute. of registration (Tay. Stats., 1147, § 27) gives priority to the

one whose conveyance is first recorded. The good faith which will sustain the subsequent purchaser's conveyance, under this statute, is the absence of any knowledge on his part of the execution of the prior conveyance or the agreement to execute it. *Fallass v. Pierce,* 30 Wis., 468–9. See, also, Story's Eq. Jur., 11th ed., §§ 398, 400, 400d; 4 Kent's Com., 179, note (d); 2 Sugd. V. & P., 543, note (a); *Glass v. Hulbert,* 102 Mass., 24; *Hanly v. Morse,* 32 Me., 289. 2. That it was error to deny *Murphy's* right to the purchase money, and render judgment against him for costs. 1 Jones on Mortgages, §§ 138–9; *Stark v. Coffin,* 105 Mass., 328, 333; 3 Wait's Pr., 77. 3. That plaintiff was not entitled to costs. In concurrent promises, the party suing turns his promise into a condition precedent *(Phillips v. Fielding,* 2 H. Bl., 123), and a party asking a specific performance of a contract for the conveyance of land must tender the purchase money and demand a deed before bringing his action. *N. W. Iron Co. v. Meade,* 21 Wis., 474; *Williams v. Healey,* 3 Denio, 363, 367; *Morris v. Sliter,* 1 id., 59; *Wells v. Smith,* 7 Paige, 22; *Johnson v. Wygant,* 11 Wend., 48; *Parker v. Parmele,* 20 Johns., 130. A different rule might deprive the vendor of his lien for purchase money, or subject him, as in this case, to the payment of heavy costs, to secure that which is his of right, before a conveyance can be demanded. In this case, two-thirds of the purchase money were unpaid, and there was no averment or proof of tender, but, on the contrary, the complaint alleged full payment, and thus made an answer absolutely necessary. Defendants are therefore entitled to their costs, whatever the judgment may be on the main issue. Plaintiff is in no better position than a mortgagor seeking to redeem, who, as a general rule, must pay costs though successful. But courts have refused to allow costs to either party where both have claimed more than they were justly entitled to. Courts of equity exercise a sound judicial discretion on this subject. 3 Wait's Pr., 472, 473, 477; *Green v. Wescott,* 13

Wis., 606; *Reed v. Jones,* 15 id., 49; *Massing v. Ames,* 38 id., 285.

For the respondent, a brief was filed by *Smith & Lamb,* and the cause was argued orally by *Mr. Lamb.* They argued the following among other points: 1. *Murphy* had constructive notice of plaintiff's rights as vendor. Willard's Eq., 251 and cases cited; 3 Sugd. V. & P., ch. 23, sec. 47; *Gouverneur v. Lynch,* 2 Paige, 300; *Grimstone v. Carter,* 3 id., 421; *Chesterman v. Gardner,* 5 Johns. Ch., 29, and cases there cited; *Wickes v. Lake,* 25 Wis., 71. 2. The costs were in the discretion of the court. R. S. 1858, ch. 133, sec. 40; Tay. Stats., 1532, § 57. Generally, in equity, costs belong to the prevailing party. 2 Barb. Ch., 322; 6 Johns. Ch., 33, 36. " Where a vendee is ready to pay, but the vendor refuses to perform his part of the contract, the latter, on specific execution being decreed, will not be entitled to interest, and should be subjected to pay the costs." *Hart v. Brand,* 1 A. K. Marsh., 159; 3 Sugd., ch. 16, sec. 2, subds. 1, 2. *Murphy* having joined *Brown* in his attempt to deprive plaintiff of his rights, having adopted *Brown's* answer, and set up in addition that his mortgage was paramount, costs might properly be awarded against him.

ORTON, J. The evidence in this case was very conflicting, and imposed upon the circuit court the duty of determining its credibility and weight, by tests which can only be applied by the court which has the advantage of hearing the testimony from the lips of witnesses, and of observing their manner and appearance upon the stand. It would be a most unsafe rule to determine the weight and preponderance of evidence in any case by the disparity in the number of witnesses, and by the test only of their numerical majority. It is the settled practice of this court not to disturb the findings of the circuit court upon questions of fact, except in cases where the preponderance of the evidence is most clearly against them; and

the reasons of this rule are most comprehensively expressed by the chief justice in *Ely v. Daily*, 40 Wis., 52. Adhering to this rule, we would not be justified in finding the facts of this case adversely to the finding of the circuit court.

The only question, then, to be determined here upon this appeal is, Do the findings of fact by the circuit judge justify his conclusions of law?

*First.* As to the certainty of the terms of the contract, there seems to be no cause of objection, except as to the price to be paid for the lot. The law, as laid down by the authorities, that " it is not necessary that the contract should determine the price in the first place " — that " it may appoint a way by which it is to be thereafter determined, in which case the contract is perfected only when the price has been so determined," — would seem to apply to this contract. The price was to be determined by the sale of the first other lot in the vicinity, which sale had been made long before the commencement of the suit. Thereby the price of the lot in question became definite and certain. The admission of the appellant to the witness Peterson, that lots by the side of the one in question had been sold for the price of one hundred and twenty-five dollars, leaves no question open upon this point. To make the case of *Gelston v. Sigmund*, 27 Md., 334, applicable to this case, the contract here should have been, that *Cunningham* agreed to pay " as much as any one else would pay " for the very lot in question; and then this court might say, as it was said in that case, that " it could not be certainly ascertained, it was not practicable to know, how much another *would* give." The other authorities cited by the learned counsel for the appellant are equally wide of application.

*Second.* That a tender of the purchase money, or the unpaid balance, should have been made, and a deed demanded, before suit, is sufficiently answered by the uncontradicted evidence that an adjustment of the amount paid and unpaid, and a conveyance, were demanded by *Cunningham* before suit,

and that *Brown* repudiated the whole contract, and ordered him to quit the possession, which certainly was a. sufficient waiver of any further tender or demand. *Shepherd v. Milw. Gas Light Co.*, 11 Wis., 234; *Racine Co. Bank v. Keep*, 13 id., 209; *Corbitt v. Stonemetz*, 15 id., 170.

*Third.* As to *Murphy*, the mortgagee, not having any notice of the contract of sale to *Cunningham*. *Murphy's* answer does not state that he did not know of *Cunningham's* full and open possession of the lot, but that he "knew nothing of the alleged contract," and "had no knowledge of the possession of the said premises by said *Cunningham under any claim of title or ownership* of the said premises." By the evidence in the case, it appears that his attention was specially called to the possession of *Cunningham*, and he had actual knowledge of it before taking the mortgage; and he should have inquired of *Cunningham* as to his right and title, and not have relied wholly upon the statements of *Brown*. The case of *Wickes v. Lake*, 25 Wis., 71, fully settles, for this state at least, the law of constructive notice by possession. We think the circuit court was warranted in finding the mortgage, taken under these circumstances, to be "null and void."

*Fourth.* As to *Murphy's* right, in this case, to have the balance of the purchase money paid to him, and to be exempted from costs. Both *Brown* and *Murphy* were found in the *wrong*, as to the lawful claims of *Cunningham*, and joined in an answer in denial of his rights; and we think it was discretionary with the circuit court to award the costs to the respondent against them jointly, and to set off the costs against the balance of the unpaid purchase money, *pro tanto*, which seems to have left a large balance of the costs unpaid; and that this discretion was not abused.

The judgment must be affirmed, with costs.

RYAN, C. J. I assent to the judgment against the appellant *William Brown*, the respondent's vendor; but I cannot bring

myself to think the judgment against the appellant *Michael Murphy*, the mortgagee, correct.

In my judgment, the mortgagee was entitled to the balance unpaid of the purchase money. His lien covered all interest of his mortgagor, including the unpaid purchase money. And, as against him, the respondent was not entitled to offset it against the costs, especially as there is no suggestion anywhere in the case that the principal defendant, the respondent's vendor, is insolvent.

In my judgment, also, it was an abuse of discretion to give costs against the mortgagee, who appears to have acted in good faith. I know of no rule, in cases of specific performance, which warrants a judgment for costs against an innocent intervening purchaser or mortgagee. The respondent's right rested wholly in parol, except his mere possession. It may be that, under the circumstances, his possession was notice of some interest in the premises, sufficient to hold his parol right paramount to the mortgage. But this was, at most, constructive notice only. And the mortgagee appears not only to have had no actual notice of the respondent's right, but to have believed that he had none. The mortgagee might have been more diligent in his inquiries, but that appears to have been in mere ignorance, not at all in bad faith. The evidence tends to show that the respondent himself was sometimes doubtful of his right; and surely the mortgagee ought not to be punished, in costs to the respondent, for discrediting a right which the respondent himself seems to have sometimes discredited.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.

LYON, J., took no part.

On motion for a rehearing, appellants' counsel contended, 1. That to entitle a party to take a case out of the statute on

the ground of part performance of the contract, he must make out by clear and satisfactory proof the existence of a contract as alleged (*Bowen v. Warner*, 1 Pin., 600; *Hazelton v. Putnam*, 3 id., 107; *Blanchard v. McDougal*, 6 Wis., 167, 173; *Knoll v. Harvey*, 19 id., 99; *Tiernan v. Gibney*, 24 id., 190, 193; *Rowton v. Rowton*, 1 Hen. & Mun., 92; Story's Eq. Jur., §§ 764, 769); and that there was confessedly no such clear and satisfactory proof of the contract, or of all its essential terms, in this case.   2. That the rule of practice in this court, "not to disturb the findings of the circuit court upon questions of fact, except in cases where the preponderance of evidence is most clearly against them," has no application to cases like the present.   In support of this view, counsel referred to the cases above cited, and contended that *Ely v. Daily*, 40 Wis., 52, and *Murphy v. Dunning*, 30 id., 296, do not sustain the rule in the form here recited; and that *Snyder v. Wright*, 13 Wis., 689, related only to a review of questions of fact in common-law actions, required by the statute there mentioned. For the practice of this court in equity cases, counsel also cited *Sanford v. McCreedy*, 28 Wis., 103, and *Clegg v. Jones*, 43 id., 482.

Respondent's counsel, in reply, contended that, under the provision of our state constitution (art. VII, sec. 19) that "the testimony in causes in equity shall be taken in like manner as in cases at law," i. e., by examination of witnesses in open court (*Brown v. Runals*, 14 Wis., 693), the rule as to reversal in equity cases upon appeal to this court has properly been modified so as to resemble that adopted in cases at law.   *Ely v. Daily*, 40 Wis., 52; *Murphy v. Dunning*, 30 id., 296; *Bacon v. Bacon*, 33 id., 147; *Ingles v. Patterson*, 36 id., 376.   2. That the statute of frauds does not control, because cases of part performance of parol contracts for purchase of lands are excepted by the terms of the statute itself.   R. S. 1858, ch. 106, sec. 10; *Brandeis v. Neustadtl*, 13 Wis., 152–3.   3. That the mere number of witnesses in such a case is not controlling,

but it is sufficient if the court is satisfied by the evidence that the agreement was made substantially as alleged, and has been partly performed (1 Sugd. on V. & P., 6th Am. ed., 150, pl. 19; *Ingles v. Patterson, supra; Parkhurst v. Van Court-land,* in court of errors, 14 Johns., 35–6); and this is specially applicable to cases of part performance in which the purchaser has been allowed to take possession and make valuable improvements, because the element of fraud enters into the decision of such cases.   Roberts on Frauds, 131–2, 134; 1 Sugd., 151, pl. 21; *Gregory v. Mighell,* 18 Ves., 328, 333, approved by CRANWORTH, Ch., *Meyell v. Surtees,* 31 Eng. Law & Eq., 492; *Jackson v. Jackson,* 19 id., 545; *Duke of Devonshire v. Eglin,* 14 Beav., 530; *Mundy v. Jolliffe,* 5 Myl. & C., 177; *East India Co. v. Nuthumbadoo Veerasawmy Moodelly,* 7 Moore P. C. C., 497.   In no Wisconsin case cited for the appellants did this court reverse the decision of the circuit court decreeing specific performance, where a purchaser had taken possession under the contract and made improvements.

The motion was denied.