## AMERICAN WINE Co. *v.* BRASHER BROS.

*(Circuit Court, D. Colorado. July 24, 1882.)*

1. **MATERIAL ISSUE—NEW TRIAL.**

    Where wine was sold to defendants, who were regular wine merchants, upon representations made by the agent of plaintiffs that such wine had a large sale in the region covered by defendant's trade, an issue as to the truth or falsity of such representations, submitted to a jury upon a suit on an accepted draft drawn for the first installment of such wine delivered to defendant by plaintiffs, is a material issue, and the submission to the jury is not ground for a new trial.

2. **SAME—WAIVER— OBJECTION NOT MADE ON FIRST TRIAL.**

    Where an issue is tendered as to the quality of the article sold upon the representation of the agent of the plaintiffs that it was of good quality and readily salable, and the plaintiffs go to trial upon such issue, and the jury disagree after a jury is impaneled for another trial, although as a matter of law there may be some doubt as to whether such an issue ought to be submitted to a jury upon a question of fraud and deceit in respect to the sale of such article, the plaintiffs must be held to have waived any right to object to such issue.

3. **CONTRACT—RESCISSION—CONDITIONS PRECEDENT—PART EXECUTION.**

    Where a contract has been induced by fraud, it is not necessary that the party seeking to rescind the contract should absolutely tender what he has received on account of the contract. But it is necessary that he should give notice of his intention to rescind, that he will not abide by the contract, and it is necessary that, upon the trial, he should be in a situation to put the other party in the situation in which he was at the time of the discovery of the fraud. That the contract is partly executed at the time of the discovery of the fraud will not, in itself, prevent a rescission, unless it may be that it has gone so far that the subject-matter of the contract, or the greater part of it, has disappeared.

4. **SAME—VERDICT SUSTAINED ON CONDITIONS IMPOSED.**

    In this case, the jury having found a verdict against the plaintiffs, and in favor of defendants, allowing them damages for their expenses for freight, storage, etc., on the wine, it was made a condition of sustaining the verdict that the amount actually received by defendants from the sale of a part of the wine be deducted from the amount of such verdict.

Motion for New Trial.

*J. W. Hornor* and *J. A. Bentley,* for plaintiff.

*Charles & Dillon,* for defendants.

HALLETT, D. J., (*orally.*) The American Wine Company, a corporation doing business in St. Louis, Missouri, brought suit against

Brasher Brothers, a firm of this city, upon an accepted draft of $1,360. The defendants, in their answer, admitted the execution of the draft, and averred that it was given upon the sale to them of a hundred cases of wine. In that sale certain misrepresentations were made by the agent of the plaintiff as to the quality of the wine, and the demand for it in this state and in the territory of New Mexico. The agent of the plaintiff represented that the wine was as good as foreign champagnes, which was untrue, and also that it was well known to the trade of this state and in New Mexico, and that there was a large trade for the wine in this region of country, and that also was untrue. A great many matters were set up in the answer relating to the negotiation between the parties, and correspondence between them; what took place between them from time to time in reference to this purchase; and the plaintiff made a motion to strike out some parts of the answer as irrelevant and immaterial, and that motion was sustained as to all, excepting one clause of the answer, and that clause reads as follows:

"These defendants aver that, after they received the said 100 cases of said wine, they advertised the same extensively in the newspapers of the state of Colorado, and by circulars and traveling agents, stating that they were the sole and exclusive agents for the sale of said wine. at great expense. to-wit. the expense of $600. "

The answer set up that it was a part of the contract between these parties that the defendants were to make an effort to sell this wine,— "to push it," as they expressed it,—and this clause was stating one of the efforts which they made in fulfillment of their agreement. The motion was overruled as to that clause, but otherwise sustained, so that all objections which were made to the answer, except as to this clause which I have mentioned, were sustained. I state this to show that the plaintiff accepted the issues that were taken as to the quality of this wine, and as to the trade which existed for it in this country. The cause was tried before a jury last year. That jury disagreed, and were discharged when they found that they were unable to agree. At this term the cause came on for trial upon the same issues, nothing being said as to their materiality; but when we came to the trial, and a jury was impaneled and in the box, objection was made that the issues were immaterial. That objection was overruled, and parties proceeded with their evidence. The case was submitted to the jury upon the evidence. They found a verdict for the defendants, assessing damages against the plaintiff in the sum of $323. The objection that these issues were not material is renewed

by motion for a new trial. That is the matter which we have under consideration at this time.

As to the principal question, one upon which most of the testimony was offered, and which was decisive of the whole matter, I have no doubt that it was a material issue, to be determined by the jury upon the trial of the case, whether there was a trade existing in this country at the time of the sale; whether the agent of the plaintiff represented that there was such trade. It seems to me there can be no question that that was a material matter, and had some influence on the parties in making the contract. This wine was bought for sale. Defendants were merchants or traders, and they bought this to be sold again, as the agent of the plaintiff well knew; and whether there was any demand for it in the country was a very material matter for consideration. In purchasing this quantity of wine (I should have said that the contract was for a car-load of wine—it was to be delivered in lots of 100 cases each, and this was the first installment of the entire quantity,) the defendants were new in the business here. They had recently come here from Canon City, where they had for some time carried on business, but in a much smaller way than they proposed to conduct it here, and, in their purchase of so large a quantity of this merchandise, it was certainly an important question for them what disposition they could make of it; whether they could find sale for it.

As to the other question, as to the quality of the wine, there is really very considerable room for doubt whether, as matter of law, a man who deals in wine shall be allowed to say that he does not know its quality, as compared with other wines in the market. It is a matter which can be tested by the use of the article, and apparently by a very little use of it. I say, as an original question, that would be very doubtful; and, upon the evidence here, many witnesses testified that this wine was of good quality for American wine; and others, that it was not. I should say that there is room for doubt whether it is an issue that ought to be submitted to the jury upon a question of fraud and deceit in respect to the sale of the article. But it must be remembered that the plaintiff accepted this issue without objection when it was tendered to him. He made no objection whatever to that part of the answer; he made objection, as I have stated, to some other parts—the correspondence between parties—what took place between them; but as to this part of the answer he said nothing, and accepted it; replied to it. He not only accepted it

then, but throughout one trial, and after we had had a jury to disagree upon the question, which occasioned considerable expense to the parties and the government in respect to the trial, and up to the time of another trial, and after the jury was impaneled for another trial. Upon that I think it ought to be said that although it is a matter of some doubt whether it is a question that ought to be ruled against the defendants, as matter of law, that the plaintiff has waived any right it had to raise the question in this form and at this time. Upon that I have not discovered anything in the authorities or reports which is directly in point; but there is here something that is said by the supreme court of Wisconsin in respect to a doubtful averment in a complaint, (*Potter* v. *Taggart*, 11 N. W. Rep. 678:)

"The learned counsel for the respondent insists—*First*, that the complaint does not show that the appellant was injured by the alleged fraudulent representations and concealment of the respondent, and so fails to state any reason for a rescission of the contract; and, *second*, that it fails to show that he has returned, or offered to return, the note and mortgage to the respondent before the action was commenced, and in that respect, he fails to show himself in a position to demand his purchase money back.

"We are inclined to hold that, after answer upon an objection for the first time to its sufficiency, the complaint is sufficient in both respects. In the case of *Hazleton* v. *Union Bank*, 32 Wis. 34–43, Justice Lyon, in delivering the opinion, says:

"'The rule is well settled that a greater latitude of presumption may be indulged in to sustain a complaint where the objection that it does not state a cause of action is taken for the first time at the trial, and after an issue of fact has been taken upon it by answer, than where the same objection is taken by demurrer.'

"The same rule was stated in *Teetshorn* v. *Hull*, 30 Wis. 162–167; *Hamlin* v. *Haight*, 32 Wis. 238–242; *Luth. Ev. Church* v. *Cristzau*, 34 Wis. 328; *Johnson* v. *Ashland Lumber Co.* 47 Wis. 326; *Johannes* v. *Youngs*, 45 Wis. 445; *Wittmann* v. *Watry*, Id. 493.

"Under the rule established by the cases cited, we think the complaint sufficiently alleges that the respondent was guilty of making either a fraudulent representation or a fraudulent concealment of the fact that a part of the property described in the mortgage had been released before the date of the sale, and that such fraud was injurious to the appellant."

The court then go on to discuss the question of fraud, as alleged. I think what is said there is applicable to a case of this kind, where an issue is tendered of a doubtful character, and parties come to say after trial that there is an immaterial issue.

The more difficult question presented in the case, and which I believe was fully presented at this trial, if not at the other, is,

whether the defendants were in a position to rescind the contract, and object to the payment of the draft which they gave for the wine at the time that they attempted to rescind. They gave notice of their intention to rescind the contract in the last days of October, 1880, the draft having been drawn on the twenty-ninth day of June. Precisely when it was accepted does not appear; but the notice of their intention to rescind was given nearly four months after the acceptance of the draft, and at that time they had sold some 20 cases of the wine. In their letter they said nothing about the sale of the 20 cases, stating that they held the wine subject to the order of the plaintiff. Upon the letter it might be assumed that they held all the wine still in their possession, and were also ready to turn it over to the plaintiff and resist the payment of the draft, on the ground that they were misled at the time of making the purchase of plaintiff's agent in respect to the matters which I have stated. It is contended that, having sold a part of the wine, they had no right then to rescind the contract; the situation of the parties was so changed that they could not put the plaintiff in the condition in which it was at the time the draft was given, and therefore there could be no rescission of the contract; that whatever remedy defendants have must be by way of diminishing the damages in an action for the value of the wine. And there are many cases which state the proposition in general terms, that, in order to rescind, the other party must be put in the same situation in which he was at the time of entering into the contract; that the party offering to rescind must restore whatever he has received under the contract, and if he is not in a situation to do that, he cannot rescind at all. One case in the seventy-fifth Illinois reports is very much in point on that subject. *Wolf* v. *Deitzsch,* 75 Ill. 206. The defendant there ordered 81 gallons of Affenthaler red wine, the quality to be good. The price agreed upon was $2.50 per gallon; the defense set up, that when received, it was not good, but very sour, and wholly unsalable as wine. Some 20 gallons of the wine were sold by appellee, and for the value of this the judgment was for appellants; but for the value of the residue the judgment was against them.

The court go on to discuss the question as to the quality of this wine, and its condition at the time it was shipped to the defendant. They arrive at the conclusion that the weight of evidence is to the effect that the wine was according to the contract; in fact, several witnesses testified that it was of that quality, while the defendant

himself testified it was not good wine; that it was in bad condition when received. But the conclusion of the court evidently is that the plaintiffs in the suit complied with their contract. They then go on to say that—

"On appellee's own evidence, however, the law is against him, and the instructions ought not to have been given without modification. The doctrine repeatedly announced by this court is that a party cannot affirm a contract in part, and rescind it as to the residue. If he rescind he must do so *in toto*. He must put the opposite party in as good a condition as he was before the sale, by a return of the property purchased, unless it is entirely worthless. And where a vendee has a right to object that goods delivered are different in quality from those he purchased, he must do so within a reasonable time, and before exercising acts of ownership over them. If, before objecting to their quality, he exercises any act of ownership over them, as by selling a part, etc., he cannot afterwards repudiate the contract, so as to wholly defeat the vendor's claim for the price."

In that case it is obvious that, from the nature of the objection, the wine was of inferior quality and in bad condition when received; that the defendant ought to have discovered it as soon as he opened it; and that his act in disposing of some of it after he must have had knowledge of its quality, was in affirmance of the contract, so that the general rule, as stated by the court, was directly applicable to the facts as presented.

In this I think the facts are somewhat different. Here the misrepresentation is alleged to have occurred in respect to the demand for the wine in Colorado and in New Mexico, and that is a matter which could only be determined by experience. Defendants could not know whether there was a demand for this wine until they should for some time make some effort to sell. This certainly required some time. They could not discover that within a day or week, or perhaps a month, after they took the wine from the plaintiff. That point was submitted to the jury directly; they were told that defendants must rescind as soon as they discovered that they had been imposed upon, and it was a question for them to consider whether they had acted in time in this instance. In returning a verdict for the defendant, the jury must have decided upon the evidence that the notice was given in season. In support of the verdict of the jury, and to the effect that the plaintiffs were not precluded from rescinding the contract by having dealt with the wine and having disposed of some of it, the defendants cite 2 Parsons, Cont. 780. He says that:—

" Where the right to rescind springs from discovered fraud, there is an exception to the rule. The defrauded party does not lose his right to rescind because the contract has been partly executed, and the parties cannot be fully restored to their former position."

The authorities cited do not bear him out. I have examined all of them. In my judgment none of them support this conclusion. That is not an extraordinary thing with this author, but it seems that some courts have accepted the proposition as stated.

In *Hendrickson* v. *Hendrickson*, 51 Iowa, 68, a defendant asked the court to instruct the jury as follows:

" If you find from the evidence that the defendant, as part of the purchase price of the team, paid a debt due from the plaintiff, and $58 (dollars) money due from her husband's estate, for which the same was liable, then the plaintiff cannot rescind the contract and reclaim the property without placing the defendant in the same position he was before the trade was made, by repaying or offering to repay the money paid out by him, unless the defendant was guilty of some fraud practiced upon her, and you should find for the defendant; but if you find he practiced fraud, she can recover without tendering what she received from him."

The court say that this instruction was supported by Mr. Parsons' view of the law, and that it ought to have been given. "The foregoing instruction is in strict accord with this authority. It should, therefore, have been given." Whether they would have declared it to be a correct statement of the law if the instruction had come from the other side, may be somewhat doubtful. It will be observed that the defendant was stating the law against himself, and stating it very strongly, and the court refused to give it as he stated it. The supreme court say the court ought to have complied with his request; but at all events the court seem to have accepted Mr. Parsons' view of the law, and gone a little further than he does, for, as the proposition is there given, it is to the effect that one who has been defrauded is under no obligation whatever to make restitution of what he has taken, and Mr. Parsons does not state the proposition so strongly as that.

In another case, in 32 Vt., the proposition is stated apparently with some care in this way: "But a *defrauded party* does not lose his right to rescind because the contract has been in part executed, and the parties cannot be fully restored to their former position, but he must rescind as soon as the circumstances will permit." That is the proposition as Mr. Parsons states it, I believe.

In this Wisconsin case, which is a very late one,—decided in March of this year,—the proposition is stated somewhat differently, and here the facts were very much controverted. The authorities are extensively reviewed. It is evident that the subject received a good deal of attention:

"The rule as to the rescission of contracts, stated by Leake in his Digest of the Law of Contracts, is as follows: 'The fact that the contract was induced by fraud gives the party defrauded the right, on discovering the fraud, to elect whether he will continue to treat the contract as binding, or avoid it; but the contract continues valid until he has determined his election by avoiding it. He must determine his election to rescind by express words to that effect, or by some unequivocal act, under circumstances which render such words or act binding.'

"The complaint in this action states that as soon as the appellant ascertained that he had been defrauded in the purchase of the note and mortgage, he immediately went to the respondent, 'for the purpose of demanding of him a return of the $403.91 so paid by the appellant to the respondent, and to return to him the said note and mortgage; but the respondent then and there refused to do anything in regard to the matter, and then and there refused, and still does refuse, to return to plaintiff said sum, or any part thereof.' It is true, this allegation does not state in express words that the appellant offered to return the note and mortgage to the respondent; but we think it is fairly to be inferred, from the language used, that he did make such offer. He says he went to the respondent for the purpose of making such offer, and to demand his money back, and that the respondent refused to do anything in regard to the matter, and 'then and there refused, and still does refuse, to return the money, or any part thereof.' The refusal of the respondent to do anything about the matter, and to return the money, or any part thereof, clearly implies that he was requested by the appellant to do something about it, and to return the money.

"In order to rescind a contract by a purchaser, when a ground for rescission exists, it is not necessary to make any formal tender of the property held by the purchaser; it is sufficient to make return of the same, (see *Van Trott* v. *Wiese*, 36 Wis. 439–448; *Mann* v. *Stowell*, 3 Pin. 220;) and if the vendor refuses to receive the property back and return the purchase money, or do anything except to keep what he has, no formal tender of the property is necessary. The right of the vendor to have the property formally tendered is waived by his refusal to accept it in advance.

"In *Wright* v. *Young*, 6 Wis. 127, this court say: 'In this case the appellant has, from the outset, resisted the performance of the contract, and insisted that it was not binding on him. Any tender to him while occupying this ground of defense would have been an idle ceremony.'

"So, in the case at bar, the respondent insists that the appellant has no right to rescind the contract, and refuses to return the purchase money, or any part thereof. By taking that position he relieves the appellant from making any formal tender of the note and mortgage. The appellant has done all that is necessary to maintain his action when he shows that he has

offered to return what he had received upon the contract, and that the respondent had refused to receive it and return the purchase money. The following cases hold the same rule: *Bank* v. *Keep*, 13 Wis. 209–214; *Corbitt* v. *Stonemetz*, 15 Wis. 186; *McWilliams* v. *Brookens*, 39 Wis. 334; *Cunningham* v. *Brown*, 44 Wis. 72.

"If the vendor in such case is ready to rescind on his part, then it becomes necessary for the purchaser to tender and return to the vendor all he has received under the contract. When the vendor refuses to do anything in the matter, and the vendee brings his action to recover the purchase price, he must prove on the trial that *he is in a condition to restore to the vendor what he received upon the contract*, and should make restoration upon the trial."

The principle, I think, of that case, and of the other one in Vermont, and of many cases which I have examined, is that in case of fraud, where the contract has been induced by fraud, that it is not necessary that the party seeking to rescind the contract should absolutely tender what he has received on account of the contract. It *is necessary* that he should give notice of his intention to rescind—that he will not abide by the contract; and it *is necessary* that upon the trial he should be in a situation to put the other party in the situation in which he was at the time of the discovery of the fraud. That the contract is partly executed at the time of the discovery of the fraud will not in itself prevent a rescission, unless it may be that it has gone so far that the subject-matter of the contract has disappeared, or the greater part of it. To illustrate that matter: if these parties had sold all, or nearly all, of the wine, there could be no question about it; but having sold but a small part, as relates to the entire quantity which they were to purchase, which was a car load, I think, by that act, the act being within the contemplation of the parties at the time they made the contract, they will not be precluded from rescinding it, and the circumstance that, at the time of notifying the plaintiff of their intention to rescind, they did not state to plaintiff that they had sold a portion of this wine, is not controlling; they did express the intention to rescind the contract, and if now they can put the plaintiff in substantially the position he then held, I think they ought to be allowed to rescind.

Now, as to the money which was received for this wine, nothing was said about it at the trial. It was not mentioned to the jury in the charge which was given then, and it is fair to assume that it escaped the attention of counsel also; that they were so intent upon maintaining the principle issue, to recover the full amount of this draft, they gave no attention to this subject of the sale of the wine.

If my attention had been called to it, I should have asked the jury to allow upon the damages which they found for the defendants, if they found any, the value of this wine; but nothing was said to them upon the subject, and the presumption is that they made no allowance whatever for it.

But the matter is not beyond control. If they did not allow for it, we may do so at this time. The value of that wine can be easily ascertained, and it is competent now to deduct it from the amount returned by the jury. The jury have said in their verdict, with more than usual particularity, "we assess the damages, including freight and storage, to the amount of $323." Under the charge which was given them, as those were the matters submitted to them, and they were advised with reference to the expenditures of defendants for advertisements in their effort to sell this wine, that they were so indefinite, so difficult to be determined, that they could make no account of them, I have not a doubt that the verdict was for these two items, the storage and the freight. The freight amounted, I believe, to something like $214. I think the value of the wine which was sold, to be ascertained, probably, at the rate of $13.60 per case, as that was the rate at which it was all sold, is to be deducted from the allowance of the jury,—that is, if the defendants assent to that,—and on that the motion for new trial will be overruled.

There were some other questions presented, as that one witness was absent at the time of the trial, and some other matters which I do not clearly recall, but I think them unworthy of attention, and have no disposition to comment upon them. If the defendants will deduct from the amount of their damages whatever these 20 cases of wine come to, I shall be inclined to enter judgment upon the verdict.

Defendants remitted $272 from the damages returned by the jury, and judgment was entered on the verdict.