Carrier and another vs. Atwood.

CARRIER and another, Respondents, vs. ATWOOD, Appellant.

*April 28 — June 1, 1885.*

CONTRACTS: ACCOUNTING. *(1) Contract construed. (2) When demand not necessary. (3) Findings: Evidence. (4) Costs: Discretion.*

1. By the terms of a contract under which plaintiffs worked the defendant's farm they were to take proper care of the milk produced and deliver it in good order to such factory as the defendant should direct, and the defendant was to pay them "one half of all dairy products after deducting the cost of manufacture of butter and cheese." *Held,* that such cost of manufacture was to be deducted from the entire proceeds of the dairy products, before division, and not from the half which plaintiffs were to receive.

2. If, in an action for an accounting, the evidence shows that no amicable adjustment could be made, no specific demand by the plaintiff for a settlement need be shown.

3. Findings of fact by a referee in an action for an accounting are *held* not to be against a clear preponderance of the evidence.

4. In an action for an accounting the matter of costs is within the discretion of the trial court, and its judgment upon that question will not be disturbed except upon plain proof that injustice has been done.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is stated in the opinion.

For the appellant there were briefs by *Shepard & Shepard,* and oral argument by *Mr. Chas. E. Shepard.*

*N. C. Giffin,* for the respondents.

TAYLOR, J. The respondents and plaintiffs in the court below had worked the farm of the defendant and appellant. The farm was a large one, situate in Fond du Lac county, and was carried on mainly as a dairy farm. There were a large number of cows, several horses, and other stock on the farm, which went into the possession of the *Carriers* with the farm. There was a written contract between the parties, in which it was attempted to define the rights of the respective parties to the products of the farm

and of the dairy during the year. At the end of the year, the possession of the farm, cows, and other stock was returned to the defendant, *Atwood*, but the parties were unable to come to a satisfactory settlement of their respective claims under the contract, and this action was brought by the plaintiffs and respondents for an accounting and settlement of the business transacted under such contract.

Although there seems to have been some dispute in the court below as to the nature of the action set out in the complaint, it seemed to be conceded by both parties in this court that the action must be considered an action in equity for an accounting between the parties. The case was referred by the court below to a referee to hear, try, and determine the same. .After a very careful trial of the case, the referee made his report to the circuit court, finding a balance in favor of the plaintiffs and against the defendant of $236.23. Neither party was satisfied with the report, and both filed exceptions to the findings of fact, and moved for a modification of the report in the circuit court. The circuit court modified the report in favor of the plaintiffs by reducing the credit the referee gave the defendant for making the butter produced during the year, from the sum of $592.45 to $296.22, and by striking out two other items of $10 each allowed the defendant; and in favor of the defendant by striking out a credit given to the plaintiffs for two colts, $70, and by increasing his credit for damage sustained by reason of the neglect of the plaintiffs in caring for the heifers in their possession during the year, from $27 to $54; and so making the balance in favor of the plaintiffs the sum of $455.45, instead of $236.23, as found by the referee; and for this amount judgment was rendered in favor of the plaintiffs, together with the costs of the action. The defendant appeals to this court, and assigns many errors, most of which are alleged errors of fact.

The main attack upon the judgment upon its merits is

the reduction by the circuit court of the credit of the defendant for making the butter from the sum of $592.45 to the sum of $296.22. Whether this reduction was properly made, is, we think, a question of law depending upon the construction of the written contract between the parties, rather than upon any other evidence given on the trial. The parts of the written contract bearing upon this question are the following: The plaintiffs in such contract agree, among other things: "(5) To milk, feed, and care for all the cows and other stock on said farm during said year. (6) To take proper care of all such milk produced, and deliver the same in good order to such factory in said town as the first party shall direct." The defendant, *Atwood*, is the first party referred to. "(16) To perform all the above-named and other necessary labor in properly working said farm in a good and sufficient manner, and as shall be directed by said first party." These three paragraphs — 5, 6, and 16 — are found among the things which the plaintiffs are required to do on their part, and are the only stipulations on their part having any bearing upon the question. Among the things which *Atwood*, the defendant, agrees to do and perform on his part, paragraph 8 is the only one relating to this subject, and is as follows: "(8) To pay the second parties one half of all dairy products of said stock after deducting the cost of manufacture of butter and cheese."

There is hardly any room for construction upon the terms of this contract. All the plaintiffs are required to do with the cows is to milk, feed, and care for them, and take proper care of the milk produced, and deliver the same in good order to such factory in the town as *Atwood* should direct. When they have done that, their duty as to the cows and milk is wholly performed. And although there is nothing said about who should see to the manufacture of the milk into butter or cheese, it is clearly implied that *Atwood* should see to that, as he expressly agrees to pay the plaintiffs one

half of all dairy products of the cows after deducting cost of manufacture. Clearly, under this contract, when the milk was delivered by the plaintiffs to the factory designated by defendant, it was practically delivered to him, and he engages, in effect, to see that it is properly manufactured into butter and cheese, and deliver to them half of the product, after taking therefrom a sufficient quantity to pay for the manufacture.

The referee found that the net proceeds of butter produced from the milk of the cows during the year were $2,591.13. This was the net proceeds, not deducting anything for the manufacture, but deducting the commissions on sales. One half of this he credited the plaintiffs with, and charged the same amount to the defendant. The referee then credited the defendant with $592.45 for manufacturing the same. One half of $2,591.13 is $1,295.56. Deduct from that the $592.45 credited to the defendant for manufacturing, and the net amount coming to plaintiffs on the butter account is $703.11; whereas the cost of manufacturing should have been first deducted from the $2,591.13, which would leave $1,998.68, the half of which is $999.34 due from the defendant to the plaintiffs on this account, instead of $703.11, as allowed by the referee. To our minds it is perfectly clear that the circuit court was right in modifying the report of the referee upon this item of the accounts. We see nothing in the evidence of either the plaintiffs or defendant which is at all in conflict with this construction of the contract. The plaintiffs say that before they went into possession under the contract, and presumably before the contract was made and signed, there was a talk about making the butter, and it was thought by all parties that the defendant could make it better and cheaper than they could, and that the defendant agreed to make the butter for four cents per pound; but there is nothing in the evidence that conflicts with the agreement. that the cost of

making the butter shall be first deducted from the amount received therefor, and the balance divided between the parties.

It is also objected by the learned counsel for the defendant that no sufficient demand for a settlement was made by the plaintiffs before the action was commenced, and that the action was prematurely commenced,— a large portion of the butter product being unsold at the time of its commencement. We think there was a sufficient demand of settlement, and certainly the evidence given on the trial, and the claims made by the respective parties, show that there was no prospect of any amicable arrangement being made without litigation. The plaintiffs had the right to have the accounts between themselves and the defendant, growing out of the contract, settled and adjusted, and there being an evident inability on the part of the parties thereto to settle their conflicting claims arising out of their different constructions of the contract, and their differences in regard to the amounts of the claims made by the respective parties, they had a right to commence the action without any specific demand. If the evidence in the case shows that no amicable adjustment of the matter could be made, they were justified in bringing the action. *Cunningham v. Brown*, 44 Wis. 72; *Dahl v. Fuller*, 50 Wis. 501; *Linderman v. Disbrow*, 31 Wis. 465.

The fact that a portion of the butter had not been sold when the action was commenced, was no objection to its maintenance. That fact would not have interfered with a settlement of their affairs had there been no other difficulty in the way.

As to all the other matters claimed as errors by the learned counsel for the appellants, they depend upon the evidence, and are errors of fact depending upon the construction to be given to and the weight of the evidence upon which the findings of the referee and court are based. The

case appears to have been carefully tried by the referee. His findings upon the several questions to which the learned counsel for the appellant objects, are certainly supported by the evidence given in the case, and we think this court would not be justified in changing these findings because there is other evidence in the record which would sustain the findings which the appellant claims should have been made. We must presume that the referee, in coming to his conclusions on these questions of fact, took into consideration all the evidence in the case in support of and against their correctness; and it is hardly necessary for us to say that, upon the record, the findings are supported by evidence appearing therein, and that such findings are not against the clear preponderance of the evidence as a whole. *Cunningham v. Brown*, 44 Wis. 72; *Ely v. Daily*, 40 Wis. 52; *Murphy v. Dunning*, 30 Wis. 296; *Thrall v. Thrall*, 60 Wis. 506.

The question of costs in actions of this kind is within the discretion of the court in which the action is tried. That court, upon the whole case, can better determine who is in fault, and who rendered the litigation necessary, than this court can, and so can better determine who ought to pay the costs of the litigation; and this court will not interfere and reverse the judgment of the trial court upon that question, except upon plain proof that injustice has been done in that matter. From the evidence in the record it certainly does not appear that the defendant was ready and willing to adjust the differences between himself and the plaintiffs amicably and without suit, upon an equitable and fair basis, but rather invited the litigation as the only means of such adjustment. We cannot say, in view of all the facts, that the court abused its discretion in charging the taxable costs of the litigation to the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.